**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

VINSON L. HAHN,

      Defendant-Appellant.

No. 07-5117

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:06-CR-00167-001-CVE)**

---

James Fatigante of Tulsa, Oklahoma, for Defendant-Appellant.

Charles M. McLoughlin, Assistant United States Attorney (David E. O'Meilia, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **HARTZ**, **SEYMOUR** and **O'BRIEN**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Vinson L. Hahn pled guilty to violating 18 U.S.C. § 656, the misapplication of financial institution funds, and was sentenced to eighteen months incarceration and a five-year term of supervised release. He appeals, challenging the calculation of loss, restitution order, consecutive sentence, and application of special sex offender conditions. We affirm.

I.

Mr. Hahn began his employment with the Bank of Oklahoma (BOK) in October 1999 as a Transfund ATM technician. In February 2002, following a discovery of shortages in the automated teller machines (ATMs), BOK began an investigation. ATMs are stocked with "straps" of cash, with each strap containing 100 bills of varying denominations. The machines were reporting straps containing only seventy-nine or eighty bills. Investigators learned that the problem appeared to result from someone taking bills out of the straps used to refill the ATM and then putting a "short" strap into the machine.

Authorities subsequently initiated a formal investigation focusing on Mr. Hahn after discovering a strap on his route with only forty-eight bills in it. They found additional shortages after a change in his regular route. Then, on January 27, 2004, Mr. Hahn was detected by a surveillance camera installed by investigators. The method Mr. Hahn used to take the money — removing part of a strap of bills taken from the replenishment stash — was consistent with the

previous thefts. He was found to have $640 on his person and he admitted to having taken money on several prior occasions. He was terminated from his employment at BOK.

Several months later, Mr. Hahn was arrested for an unrelated state offense, two counts of lewd and indecent proposal to a child. He was found guilty on April 6, 2006 and sentenced to consecutive seven and twelve year sentences.

The one-count information in the present case charged Mr. Hahn with the misapplication of financial institution funds between November 22, 1999 and January 27, 2004. He pled guilty and was sentenced to eighteen months incarceration followed by a five-year term of supervised release, to run consecutive to the nineteen-year state sentence. The court also ordered restitution in the amount of $53,392.75. The court imposed the standard conditions of supervised release as well as several additional ones including special sex offender conditions.

## II.

Mr. Hahn argues that the district court incorrectly calculated the amount of loss, and that his sentence under the guidelines is therefore in error. The district court found by a preponderance of the evidence that the loss to BOK was $55,782.64, which increased Mr. Hahn's offense level under the guidelines by 6 levels. *See* U.S.S.G. § 2B1.1(b)(1).

-3-

We review the district court's calculation of loss for clear error. *United States v. Leach*, 417 F.3d 1099, 1105 n.8 (10th Cir. 2005). "To reverse under this standard requires that, based on the entire evidence, we have a 'definite and firm conviction that a mistake has been committed.'" *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1221 (10th Cir. 2007) (*quoting Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). The applicable guidelines' commentary notes that the sentencing court "need only make a reasonable estimate of the loss," explaining that "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence." U.S.S.G. § 2B1.1. cmt. n.3(C).

Witnesses for the prosecution testified that Mr. Hahn told investigators he deposited the cash he took from ATMs into his bank account.[1] According to investigators, Mr. Hahn admitted to having a gambling problem, but said that he kept his gambling winnings at home. Mr. Hahn did not identify any other sources of income to explain the cash deposits. The government presented evidence showing there were between two and seven cash deposits into Mr. Hahn's account each month, and that withdrawals from ATMs located in or near casinos occurred more frequently and for larger amounts over time. The district court based its calculation of loss on the evidence showing the amount of cash deposited into Mr. Hahn's checking account during his employment with BOK. The government

---

[1] Mr. Hahn's paychecks from his Transfund employment and the National Guard were deposited directly into his bank account.

concedes that it does not have direct evidence of the actual amount of loss to BOK, which it believes to be much higher.[2]

The government presented an exhibit comparing actual losses from the ATMs to expected or "baseline" losses, with expected losses based on average loss per ATM machine prior to Mr. Hahn's employment with BOK. The total above-baseline loss to the Tulsa region from 2000 to 2004 was $203,690. The loss jumped from $18,664 in 1998 and $19,918 in 1999 to $41,039 in 2000, $50,972 in 2001, $77,155 in 2002, and $104,954 in 2003. The most damaging circumstantial evidence came from 2004, when Mr. Hahn only worked for twenty-seven days in January before being dismissed. The loss for that one month was $22,033, while the total loss for the remainder of the year was only $7,707. One witness's conclusion when asked about the figures was that "[the losses] started ramping up at the time of the first cash deposit last November [1999] and came to a screeching halt in the month of January of 2004." Rec., vol. III at 79 (testimony of Mr. Bourgeois). The government introduced several additional pieces of evidence, including Mr. Hahn's admissions to investigators regarding the amount

---

[2] The court found the loss was $55,782.64 but noted that it "believe[d] that the amount of that loss actually sustained as a result of thefts by this defendant [was] much higher, but that the defendant has benefitted from the fact that perhaps only a portion of his thefts were deposited into his checking accounts." Rec., vol. III at 96.

of the thefts[3] and audits of losses on Mr. Hahn's route.[4]

Defendant argues that the government failed to present evidence sufficient to support the court's finding. He points to the lack of evidence linking the cash deposits in his account to BOK's losses and to the 2000 and 2001 audits that failed to reveal problems with his route. Mr. Hahn also challenges the government's calculation of losses based on the entire Tulsa region, rather than on Mr. Hahn's routes specifically.[5]

The district court relied on the "credibility of the witnesses called by the government and [] the strength of the pattern evidenced in [the] Government's Exhibits." Rec., vol. III at 95. The court noted the pattern and frequency of cash deposits (which were often in round numbers), Mr. Hahn's gambling habit and "financially precarious position," and his admission that he deposited the stolen

---

[3] When he was first apprehended in January 2004, Mr. Hahn told investigators that he had stolen from ATMs on two or three occasions during the past year, taking a total amount of between six and eight thousand dollars. Mr. Hahn later told investigators that the total could be between ten and twelve thousand and that he was unsure of the exact amount, as "he would just take cash out and put it in his pocket." Rec., vol. III at 15. He said that he first began taking money out "around 1999 or 2000." *Id*.

[4] Audits performed in 2000 and 2001 did not reveal a problem with Mr. Hahn's route. Audits in 2002 and 2003 did reveal shortages in his route, although only in the amount of a few thousand dollars. Following Mr. Hahn's apprehension in early 2004, investigating officers performed a full audit on his route and found five ATMs with shortages.

[5] It is not clear from the record why the government did not provide data specific to the route that Mr. Hahn serviced.

cash into his checking account but kept his gambling winnings at home. *Id.* at 95-96. Mr. Hahn is correct to note there is no evidence directly linking the deposits made to his account to the losses recorded by the bank. There are, however, possible explanations for this apparent discrepancy, such as difficulty in detection[6] and the likelihood that Mr. Hahn did not immediately deposit all of the money he took. Audits of Mr. Hahn's routes revealed shortages, the losses to the Tulsa region dropped off drastically following his termination, and Mr. Hahn admitted he deposited cash from the ATM thefts into his account and was unable to name any other source for the cash deposits. In short, under a clear error standard, the record contains evidence sufficient to support the sentencing court's findings. We therefore affirm the district court's calculation of loss.

### III.

We review the factual findings underlying the district court's restitution order for clear error and the amount of restitution for abuse of discretion. *United States v. Quarrell*, 310 F.3d 664, 676 (10th Cir. 2002). As discussed above, the record contains sufficient evidence to support a finding that the BOK sustained a

---

[6] Witnesses for the prosecution explained that detection was made difficult by the lack of surveillance cameras in the ATMs and that fact that ATMs are stocked with a nine-day supply, which means that irregularities are not noticed until a week or more after the ATM was stocked. Piece count audits–where each bill is counted–are done only once at year. They also noted that all teams have access to all of the ATMs in the area, further complicating detection.

loss of $55,782.64. Accordingly, the evidence is also sufficient to support the restitution order based on that finding of loss.[7]

## IV.

Mr. Hahn contends the district court erred in sentencing him consecutively to his state sentence. We review the district court's decision for abuse of discretion. *See United States v. Hurlich*, 293 F.3d 1223, 1230 (10th Cir. 2002).

Section 5G1.3 of the Sentencing Guidelines governs the imposition of a sentence where the defendant has an undischarged term of imprisonment. Subsection § 5G1.3(a) does not apply because the instant offense was not committed while the defendant was serving a time of imprisonment. Likewise, § 5G1.3(b) does not apply because the undischarged state sentence was not relevant conduct to the instant offense. *See* U.S.S.G. § 5G1.3(a)-(b). We therefore look to § 5G1.3(c)'s Policy Statement, which applies to all cases involving an undischarged term of imprisonment not falling within subsections (a) or (b). *See* U.S.S.G. § 5G1.3(c). The Policy Statement grants the sentencing court discretion to determine whether the sentence should be concurrent, partially concurrent, or consecutive in order to "achieve a reasonable punishment for the instant offense." *Id.* The Application Note instructs the sentencing court to consider, *inter alia*, the

---

[7] The court subtracted $2,389.89, the amount of restitution Mr. Hahn had already paid BOK, to arrive at the total restitution ordered, $53,392.75.

factors laid out in 18 U.S.C. § 3553(a).  U.S.S.G. § 5G1.3 cmt. n.3(A).

The district court provided a statement of reasons, as required under our case law.  *Hurlich*, 293 F.3d at 1230.[8]  The court was not required to make specific findings, as Mr. Hahn argues.  *Id.* at 1230.  The sentencing court did not abuse its discretion in giving Mr. Hahn a consecutive sentence.

V.

Mr. Hahn challenges the imposition of special sex offender conditions, arguing that the conditions do not meet 18 U.S.C. § 3583(d)'s requirements for conditions of supervised release.  We review the district court's decision to impose special conditions of supervised release for abuse of discretion.  *United States v. Bartsma*, 198 F.3d 1191, 1197 (10th Cir. 1999).

The district court gave Mr. Hahn prior notice of its intent to impose sex offender conditions as required under our prior holdings.  *See Bartmsa*, 198 F.3d at 1200 (holding as matter of first impression that district court must give "reasonable presentence notice" before ordering sex offender registration as a special condition), *overruled on other grounds by United States v. Atencio*, 476 F.3d 1099, 1105 n.6 (10th Cir. 2007).  Mr. Hahn filed a notice of objection to

---

[8] "The Court has considered the need for this sentence to reflect the seriousness of the offense, to promote respect for the law, provide for just punishment, avoid unwarranted disparities among defendants, and to afford adequate deterrence to protect the public.  Based on those factors, the sentence imposed in this case shall run consecutively to the undischarged terms of imprisonment imposed in the state court case."  Rec., vol. IV at 20.

those conditions. At the final sentencing hearing, after hearing argument from both sides, the court imposed the special sex offender conditions.[9]

The district court is required to give reasons on the record for the imposition of special conditions of supervised release. *See United States v. Kravchuk*, 335 F.3d 1147, 1159 (10th Cir. 2003). The court need only provide a "generalized statement of its reasoning." *United States v. Edgin*, 92 F.3d 1044, 1049 (10th Cir. 1996). Here, the sentencing court provided an explanation of its decision at the final sentencing hearing:

---

[9] The special sex offender conditions, pursuant to General Order 99-17 (Northern District of Oklahoma, July 13, 1999), mandate that the defendant (1) register as a sex offender in accordance with state law; (2) participate in sex offender and/or mental health treatment as directed by probation officer, including submission to risk assessment and psychological testing; (3) not have contact with children under the age of eighteen without prior written permission of probation officer and immediately report any unauthorized conduct; (4) not engage in any occupation, business, or profession with access to children under the age of eighteen without prior written approval of probation officer; (5) not loiter within 100 feet of schools, parks, playgrounds, arcades, or other places frequented by children under the age of eighteen; (6) not possess sexually stimulating or sexually oriented material as deemed inappropriate by probation officer and/or treatment staff, or patronize any place where such material or entertainment is available; (7) maintain an appropriate appearance at all times; (8) not enter the premises or loiter near where the victim resides, is employed, or frequents except under circumstances approved in advance and in writing by probation officer; (9) at the discretion of probation officer, post a sign, mounted on any entrance to the residence, stating "(defendant's name), who resides in this residence, will have no contact with person(s) under the age of 18"; (10) at the discretion of probation officer, reside in and successfully participate in a Community Corrections Center for up to one year or until discharged by probation officer; (11) not subscribe to or use any Internet service without first receiving written permission from probation officer; (12) not consume or possess alcohol or any other intoxicating beverage.

> [T]he Court finds that the history and characteristics of this
> defendant, the fact that the [sex] crimes occurred immediately . . .
> after cessation of the activity in this case, and the fact that the United
> States probation officer is supervising the defendant and not the
> particular crime of which he is convicted, the Court finds that the
> imposition of the sex offender conditions . . . is appropriate and
> reasonable.

Rec., vol. IV at 24. Accordingly, we reject Mr. Hahn's claim that the sentencing court erred by not providing specific factual findings.

We have not dealt squarely with the imposition of sex offender special conditions where the underlying offense was not a sex crime.[10] We have dealt, however, with the case of nonmandatory special conditions imposed for conduct unrelated to the underlying offense. *See United States v. Barajas*, 331 F.3d 1141, 1143 (10th Cir. 2003) (defendant convicted for firearms offense challenged special conditions requiring counseling and child support payments); *Edgin*, 92 F.3d at 1046-47 (defendant convicted of making threatening telephone call challenged special condition prohibiting communication with son). The general rule from these decisions applies to sex offender special conditions: while the sentencing court has broad discretion in setting the conditions of supervised release, those conditions must satisfy the three statutory requirements laid out in

---

[10] We addressed a challenge to sex offender registration requirements in *Bartsma*, 198 F.3d at 1200. In that case, however, we remanded on the basis of lack of notice and so did not reach the issue of whether the court abused its discretion by imposing the registration requirement on a defendant convicted of a firearm offense.

18 U.S.C § 3583(d).  *Edgin*, 92 F.3d at 1048.

Section 3583(d) provides in pertinent part:

> The court may order, as a further condition of supervised release, to the extent that such condition--(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D); (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a); any condition . . . it considers to be appropriate . . . .

Read together with the cross-references to 18 U.S.C. § 3553(a), then, the condition must (1) "be reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant" and (2) "involve no greater deprivation of liberty than is reasonably necessary given the needs to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  *Edgin,* 92 F.3d at 1048 (internal citations, quotation marks omitted).[11]  While the condition must satisfy both § 3583(d)(1) (requiring reasonable relationship to the § 3553 factors) and § 3583(d)(2) (involve no greater deprivation of liberty than necessary), *id.* at 1049 n.5, it does not need to be reasonably related to all of the factors in § 3553.  *See Barajas*, 331 F.3d at

_____

[11] Section 5D1.3(b) of the Sentencing Guidelines mirrors 18 U.S.C. § 3583(d).  *See id.*; U.S.S.G. § 5D1.3(b).

1146 ("[E]very circuit to have decided the issue has held that a condition of supervised release may be imposed despite not being related to every enumerated factor, so long as it is reasonably related to one or more of the factors. . . . We agree with these decisions.").

Other circuits addressing this issue have followed the rule that special conditions may be imposed notwithstanding the conduct at which they are targeted is unrelated to the offense of conviction. *See, e.g.*, *United States v. McKissic*, 428 F.3d 719 (7th Cir. 2005) (upholding ban on alcohol use where defendant had not been diagnosed as alcoholic and offense was unrelated to alcohol use); *United States v. Camp*, 410 F.3d 1042 (8th Cir. 2005) (upholding child support payments and employment requirement where underlying offense was felon in possession of a firearm). More to the point here, courts have rejected the argument that sex offender conditions are limited to cases where the underlying offense is a sex offense. *United States v. York*, 357 F.3d 14, 20 (1st Cir. 2004) ("[N]othing in [18 U.S.C. § 3583(d)] limits the special condition of sex-offender treatment to defendants under prosecution for sex crimes."); *see also United States v. Ross*, 475 F.3d 871 (7th Cir. 2007) (affirming sex offender mental health assessment and treatment where offense of conviction was making false statements to the FBI); *United States v. Smart*, 472 F.3d 556 (8th Cir. 2006) (affirming imposition of sex offender special conditions where defendant's underlying crime was felon in possession of a firearm). Indeed, the First Circuit

upheld special conditions mandating sex offender treatment and prohibiting the

defendant from engaging in an occupation involving supervision of minors even

though the defendant, who was convicted of credit card fraud, had not been

convicted or accused of sexual misconduct, and "the record contain[ed] no direct

evidence that [he] ha[d] engaged in inappropriate conduct with minors." *United

States v. Prochner*, 417 F.3d 54, 63 (1st Cir. 2005). The evidence there

supporting the condition was the defendant's journal, which indicated that he

"may have had, or, at minimum, desired to have, sexual relationships with

adolescent males," and a mental health evaluation suggesting that he had "a

potential problem with adolescent males." *Id.* at 64.

While the sex offender conditions imposed on Mr. Hahn do not relate to the

nature and circumstances of his offense, they do relate to his history and

characteristics, given his recent conviction for a sex offense involving minor

children. The conditions are also reasonably related to the need "to protect the

public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

Mr. Hahn's argument focuses on the fact that the sex offender conditions

will not take effect until eighteen years after the state offense, upon his release

from prison.[12] We find this argument unpersuasive. Because conditions of

---

[12] Under state law, Mr. Hahn is required to serve at least eighty-five percent of his consecutive twelve and seven year state sentences. *See* OKLA. STAT. tit. 21, § 13.1.

supervised release always follow an individual's release from prison, those who serve lengthy terms of incarceration are necessarily subject to conditions of release that were first imposed many years before.[13]  Accepting Mr. Hahn's argument would require invalidating such provisions.  The "temporal proximity" cases upon which Mr. Hahn relies all involve situations where the conduct that formed the basis for the special condition occurred many years prior to the sentencing, which is a different matter altogether than the length of time between sentencing and the defendant's anticipated release from prison.  *See United States v. Scott*, 270 F.3d 632 (8th Cir. 2001) (vacating sex offender conditions where sex offense was fifteen years old and instant offense involved unrelated conduct); *United States v. Kent*, 209 F.3d 1073 (8th Cir. 2000) (vacating special condition requiring mental health counseling where abuse occurred thirteen years before hearing and instant offense involved unrelated conduct); *see also United States v. Carter*, 463 F.3d 526 (6th Cir. 2006) (vacating special condition requiring participation in sex offender treatment program where sex offense was seventeen years old and recent stalking conviction not clearly sexual in nature).  Temporal proximity is not a problem in Mr. Hahn's case:  the underlying conduct that led to the imposition of special sex offender conditions occurred just five weeks after he

_____

[13] Moreover, under 18 U.S.C. § 3583(e), the district court may modify the conditions of supervised release "at any time prior to the expiration or termination of the term of supervised release."  Nothing in this opinion precludes Mr. Hahn from renewing his objection to the sex offender conditions at a later time.

was terminated from BOK and three years before his federal sentencing.[14]

Mr. Hahn points out that despite his being free on bond between his arrest in 2004 and his conviction in state court in 2006, the government did not present evidence of any sexually inappropriate behavior since 2004. He argues, "[o]nly if it was shown that there was a problem *at the time of sentencing* could the Conditions imposed by appropriate." Aplt. Br. at 27 (emphasis in original). While this statement is truer to the law than his more sweeping temporal proximity argument, it nonetheless misses the mark. The very language of the statute instructs the sentencing court to consider the defendant's "history and characteristics." 18 U.S.C. § 3553(a)(1). It is not uncommon for sentencing to occur several years after the problematic conduct apparently ceased, and courts have not previously considered this a problem in the imposition of special conditions. *See York*, 357 F.3d at 17-18, 21 (upholding sex offender conditions based on prior convictions for indecent assault on minors, nine years and three years before sentencing, respectively); *United States v. Peterson*, 248 F.3d 79, 84 (2d Cir. 2001) (holding four-year-old state conviction for sexual abuse provided sufficient basis for mandatory sex offender therapy; vacating and remanding for excessive delegation of discretion to probation officer). Here, where Mr. Hahn

---

[14] Mr. Hahn was apprehended stealing from an ATM on January 27, 2004. The charges in the state case result from conduct occurring between March 1 and March 31, 2004.

committed the state sex offense just weeks after his termination from BOK as a result of the ATM thefts, the state offense is relevant to his history and characteristics for the purpose of imposing special conditions.

Mr. Hahn also argues that the sex offender conditions are an improper infringement on his liberty. Section 3583(d)'s second prong requires that the condition "involves no greater deprivation of liberty than is reasonably necessary for the purposes" of 18 U.S.C. § 3553(a)(2)(B)-(D). 18 U.S.C. § 3583(d)(2). While Mr. Hahn names conditions three, four, five, six, seven, and eleven as affecting his liberty, *see* note 9 *supra*, he does not specify *why* those conditions are particularly problematic. Nor did Mr. Hahn direct his argument in his notice of objection or at the sentencing hearing to specific conditions, other than to note that the first condition (requiring sex offender registration) could be valid if required under state law. Had Mr. Hahn objected to specific conditions, the district court would have had the opportunity to address each condition specifically and to tailor it as necessary.

As additional support for his claim that the sentencing court abused its discretion, Mr. Hahn points to the failure of the state court to add sex offender conditions and the fact that the PSR did not recommend them. Neither fact affects our disposition here. Mr. Hahn will be in federal, not state, custody during the period of supervised release, and it is the sentencing judge's responsibility to sentence the individual, not the offense. Likewise, we have

previously upheld conditions that were not recommended by the PSR. *See Barajas,* 331 F.3d at 1143; *Bartsma*, 198 F.3d at 1199.

We conclude that Mr. Hahn's special sex offender conditions satisfy the requirements of 18 U.S.C. § 3583(d). They are related to his history and characteristics and the need to protect the public, and there is no evidence in the record that they impose a greater deprivation of liberty than is reasonably necessary to deter him from further criminal conduct or to protect the public.

**AFFIRMED**.