**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 29, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RONALD TOM,

Defendant - Appellant.

No. 11-2206

(D. New Mexico)

(D.C. No. 1:09-CR-03424-JCH-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant Ronald Tom pled guilty to one count of abusive sexual contact, in violation of 18 U.S.C. §§ 1153, 2244(a)(3) and 2246(3). He

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

was sentenced to sixteen months' imprisonment, followed by one year of supervised release. Shortly before Mr. Tom was scheduled to be released from prison to commence his term of supervised release, the United States Probation Department ("USPO") filed an *ex parte* petition with the district court requesting that an additional condition be added to Mr. Tom's conditions of supervised release. Specifically, the USPO asked that Mr. Tom be required to "reside at residential re-entry center . . . for a period of up to 6 months as approved by the probations officer." Motion at 2, R. Vol. 2 at 37. After three hearings, the district court imposed this special additional condition, which Mr. Tom now appeals. We affirm.

**BACKGROUND**

In the fall of 2008, The Federal Bureau of Investigation and the Navajo Department of Law Enforcement began investigating allegations of abusive sexual contact involving a 14-year-old girl known as T.W. T.W. disclosed that for nearly a year and a half, beginning in April 2007, Mr. Tom had been touching her inappropriately. T.W. described various types of touching, from her inner thigh to her breasts and buttocks.

Mr. Tom admitted during an interview with investigators that he had touched T.W. over her clothing on at least four different occasions. Specifically, he admitted to an incident in September 2008, when he walked into T.W.'s room

-2-

where she was sleeping and began touching her leg until she awoke and told him to stop. When T.W. told Mr. Tom that she was going to tell her grandmother about the incident, Mr. Tom left the room.

Mr. Tom also admitted to a second incident that occurred the following evening. He stated that he entered T.W.'s room while she was sleeping and began touching her on her inner thigh. T.W. woke up and became upset and again told Mr. Tom that she was going to tell her grandmother. Mr. Tom then left the room. He admitted that he became excited when he touched T.W., including getting an erection.

When asked about his relationship with T.W., Mr. Tom stated he was the step-grandfather of T.W. He had helped to raise T.W. since the age of three, along with T.W.'s grandmother, Elise Long, and a woman with whom Mr. Tom had had a long-term relationship. T.W. and her grandmother moved out of Mr. Tom's house after the sexual abuse allegations were made.

As indicated, Mr. Tom pled guilty to the one count of abusive sexual contact. In preparation for sentencing, the USPO prepared a presentence report ("PSR"), which recommended an advisory sentence under the United States Sentencing Commission, Guidelines Manual ("USSG") (2009). With a total offense level of 12 and a criminal history category of I, the advisory sentencing range was ten to sixteen months. At sentencing, the district court sentenced Mr. Tom to sixteen months' imprisonment, followed by one year of supervised

release. The court's judgment provided that the terms of Mr. Tom's supervised release included a number of standard and special conditions, including that he would "not have contact with children under the age of 18 without prior written permission of the probation officer." Amended Judgment at 5, R. Vol. 1 at 26. The Judge did not order that Mr. Tom reside at a residential re-entry center after his release from prison prior to his return home.

When the USPO filed its *ex parte* petition with the district court requesting that an additional condition be imposed of residence in a Residential Re-Entry Center for an additional six months, Mr. Tom opposed the motion.

The Probation Office's reasons for imposing the condition were that, upon his release from supervised release, Mr. Tom would live in close proximity (in the family compound which Mr. Tom has inhabited for the prior thirty years) to his now-eight-year-old granddaughter, and that a mental health counselor, Dr. Bobby Sykes, believed Mr. Tom could not safely be in the community (and in particular the compound near his granddaughter) without further treatment. Dr. Sykes noted that Mr. Tom had a recurring, and chronic, alcohol abuse problem, interspersing periods of sobriety with periods of moderate to little to considerable consumption of alcohol.

On the other hand, Mr. Tom's own daughter, as well as the father of the eight-year old granddaughter, opposed the imposition of the special condition, testifying that they had already kept their daughter away from Mr. Tom when he

lived in the compound on his own recognizance before his trial. The daughter testified that she would do the same upon his release from supervised release. In particular, she testified that the granddaughter would be away at school for much of the day, and then would be under the supervision of one or the other of her parents when she was home.

Not surprisingly, Mr. Tom objected to the testimony of Dr. Sykes. Dr. Sykes interviewed Mr. Tom four times, entirely in English without an interpreter, despite the fact that Mr. Tom had essentially spent his entire life within the Navajo community. Dr. Sykes admitted that he never established a rapport with Mr. Tom, and he further agreed that Mr. Tom did not express himself or understand English well. Dr. Sykes claimed, however, that he took care to make sure that Mr. Tom understood him. Dr. Sykes' examination of Mr. Tom revealed that all four formal sex-offender-risk instruments indicated there was a low risk that Mr. Tom would re-offend. Nonetheless, he determined that Mr. Tom was at a high risk of re-offending because Mr. Tom was an introverted man from an introverted culture with limited ability in the English language, with whom Dr. Sykes had admittedly established no rapport and because Mr. Tom was very reluctant to talk about his first sexual experiences.

On the other hand, Dr. Eric Westfried, who was a licensed clinical psychologist, strongly disagreed with Dr. Sykes' reasoning and methodology. Dr. Westfield relied on a number of factors to conclude that Mr. Tom would not

re-offend if released as scheduled and not required to attend extra time in the Residential Re-Entry Center: Mr. Tom had done well living in his family compound while on pretrial release, he had appeared to abstain from alcohol, and he had significant family support.

Faced with these conflicting opinions, the district court determined to follow neither one. Rather, the district court ultimately issued a memorandum and opinion on October 18, 2011, granting the government's motion in support of the petition to modify the conditions of Mr. Tom's supervised release and require him to spend the extra six months in the Residential Re-Entry Center:

> The Court has carefully considered Defendant's arguments and concerns. However, the Court is confronted in this case with a convicted sex offender whose victim was a young teenager that Defendant considered his step-granddaughter and whom he had helped raise from the age of three. Defendant's underlying conduct involved multiple inappropriate contacts with his victim over the course of months. He would be returning home to a situation where his eight-year-old granddaughter would be living in very close proximity to him in an isolated compound. This close proximity, by itself, raises the risk that Defendant could inadvertently violate a condition of release, namely that he not come into contact with any children under the age of 18 without the written consent of his probation officer. The Court is aware that Defendant's daughter has testified that she would relocate her children if necessary to enable Defendant to return home, but the Court has not received any information indicating that this has yet occurred.

Memorandum Opinion & Order at 5, R. Vol. 1 at 32. The court further determined that:

> [l]ooking at the nature and circumstances of the offense and the history and characteristics of the Defendant, as required by 18 U.S.C.

§§ 3583(d)(1) and 3553(a)(1) [the statutory provisions dealing with conditions of supervised release and the general appropriate statutory sentencing factors, respectively], the Court sees someone who has demonstrated the capacity and willingness to sexually assault a girl who, while not a blood relative, was almost like a member of his family. He made multiple inappropriate advances multiple times while his young victim was sleeping, and claims to have no memory of doing so because of his level of intoxication. Continuing a course of treatment at a residential re-entry center would help to protect the public, and especially Defendant's young granddaughter, from further crime of Defendant, as contemplated by 18 U.S.C. § 3553(a)(2)(C). It would also provide Defendant with needed sexual therapy to help him come to terms with why he acted in the manner that he did, before being exposed to his granddaughter and other children. See 18 U.S.C. § 3553(a)(2)(D).

Id. at 32-33. The court adequately performed its duty to explain its reasons for imposing the special condition. As we have explained, "Title U.S.C. § 3583(e)(2) provides district courts authority to 'modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release. . . .'" United States v. Begay, 631 F.3d 1168, 1170 (10th Cir.), cert. denied, 131 S. Ct. 3010 (2011). Thus, "a district court has authority to modify conditions of supervised release after considering certain 18 U.S.C. § 3553(a) factors." Accordingly, as we have stated recently:

Read together with the cross-references to 18 U.S.C. § 3553(a), the condition must (1) "be reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant" and (2) "involve no greater deprivation of liberty than is reasonably necessary given the needs to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

-7-

United States v. Hahn, 551 F.3d 977, 983 (10th Cir. 2008) (quoting United States v. Edgin, 92 F.3d 1044, 1049 (10th Cir. 1996)).

The court accordingly granted the government's motion to impose the additional term on Mr. Tom's supervised release that he spend up to six more months in a Residential Re-Entry center before being released from his supervised release.

## DISCUSSION

"When the defendant objects to a special condition of supervised release at the time it is announced, this Court reviews for abuse of discretion." United States v. Mike, 632 F.3d 686, 691 (10th Cir. 2011); see also Begay, 631 F.3d at 1170. As required under our precedents, Mr. Tom was given prior notice of the court's intent to provide added conditions to his supervised release. See Hahn, 551 F.3d at 982. "The district court is required to give reasons on the record for the imposition of special conditions of supervised release" although the court "need only provide a 'generalized statement of its reasoning.'" Mike, 632 F.3d at 982 (quoting Edgin, 92 F.3d at 1049).

As indicated above from the quotations from the court's decision, it considered the need to protect the public, to provide Mr. Tom with needed treatment, and the history and characteristics of the defendant, as well as the nature and circumstances of the offense. It clearly followed the mandate to

consider the § 3553(a) factors.  We cannot say that the district court abused its

discretion in imposing the special condition of supervised release that it did.


**CONCLUSION**

For the foregoing reasons, we AFFIRM the decision of the district court.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge