**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 7, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DARIAN HUNTER, a/k/a "D,"

      Defendant-Appellant.

No. 10-1522
(D.C. No. 1:96-CR-00419-WYD-10)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

      Darian Hunter appeals pro se[1] his sentence imposed after revocation of

supervised release. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]     Hunter is represented by counsel in this appeal, but the court granted in substantial part his motion to proceed on appeal pro se, permitting him to file his own briefs and motions. The court did not remove Hunter's appointed counsel, but excused counsel from responsibility for preparing briefs or motions unless otherwise directed by the court. We liberally construe Hunter's pro se filings. *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

§ 3742(a), we affirm.

## I. Background

In October 2000, Hunter was sentenced to 92 months' imprisonment and four years' supervised release on a conviction for attempt to possess cocaine with intent to distribute, an offense he committed in September 1996. He began his term of supervised release upon release from custody in April 2005. On May 3, 2007, Hunter's probation officer submitted a Petition on Supervised Release, asking the district court to issue a summons to Hunter based upon his violations of the terms of his supervision. The Petition detailed eight alleged violations, including convictions for driving while ability impaired (DWAI) and driving under restraint; three incidences of possession and use of a controlled substance; excessive use of alcohol; failure to participate in a drug treatment program; and failure to report an arrest for driving under revocation. The probation officer later amended the Petition, adding two more violations: an additional charge of failure to report an arrest and another arrest for driving under restraint.

The district court scheduled a hearing on Hunter's supervised release violations for August 3, 2007. But Hunter ceased reporting to his probation officer, and a warrant for his arrest was issued on June 13, 2007. Hunter remained a fugitive until he was arrested in August 2010. His supervised release violation hearing was rescheduled for October 25, 2010.

Hunter's probation officer submitted a Supervised Release Violation Report and a Sentencing Recommendation, in which he calculated Hunter's advisory imprisonment range as eight to fourteen months under the policy statements in Chapter 7 of the United States Sentencing Guidelines Manual (Guidelines Manual), § 7B1.4.[2] This range was based on Hunter's Grade C violations and criminal history category of VI. *See id.* The probation officer noted that a departure from the advisory range may be warranted, based on Hunter's repeated violations of the terms of supervision and his absconding for three years. The probation officer recommended a two-year sentence, followed by two years of supervised release with special conditions. Hunter filed a response to the Supervised Release Violation Report and Sentencing Recommendation in which he admitted nine of the ten alleged violations. He did not otherwise raise any objections, indicating only that he would present evidence in mitigation at the hearing.

Hunter's counsel argued against the probation officer's sentence recommendation at the hearing. She contended that Hunter's failure to report to his probation officer should not be considered "absconding" because he remained in the Denver metro area and the authorities made little or no effort to locate him.

---

[2] "Like the post-*Booker* Guidelines, policy statements regarding supervised release are advisory in nature." *United States v. Rodriguez-Quintanilla*, 442 F.3d 1254, 1256 (10th Cir. 2006).

She also asserted that his criminal behavior (with one exception) had occurred several years before, and more recently Hunter had been maintaining a job, starting his own business, and going to school.  His counsel addressed his difficulties with group therapy and his medical condition, discoid lupus, which caused skin discoloration on his head that made him self-conscious.  Hunter also made a statement to the court, asserting that conflicts with his probation officer were at the root of his troubles.

The prosecutor indicated agreement with the probation officer's twenty-four-month sentence recommendation.  She emphasized that Hunter knew the terms and conditions of his supervision, including his obligation to remain in contact with his probation officer, yet he chose to ignore those obligations in order to avoid going back to jail.

After the prosecutor and Hunter's counsel declined further comment, the district court proceeded with its ruling.  It expressly rejected Hunter's arguments regarding mitigating factors and stated that it was unacceptable for Hunter to blame all of his problems on the probation officer when he failed to raise with the court any issue regarding his supervision and instead walked away from it.  As to his medical condition, the court stated,

> Now, I'm sorry you've got your condition, discoid lupus, but it's something you've got to deal with. . . .  You're not the only one in the world who has discoloration on parts of their body. . . . [Y]ou've got to deal with it in a way that allows you to move forward as a human being.

R., Vol. 2 at 26. The court told Hunter it would be imposing another term of supervised release and that he would be expected to abide by the court's orders.

The district court stated it was going to sentence Hunter "harshly." *Id.* at 28. It then proceeded to find that his supervised release violations were Grade C and his criminal history category was VI, resulting in an advisory imprisonment range of eight to fourteen months.[3] The court found merit in the request for an upward departure based on Hunter's absconding from supervision, his violation of the rules of supervision, and his disregard for the court's orders. After citing 18 U.S.C. § 3553(a), the court stated further that a sentence outside the advisory range was appropriate due to Hunter's repeated violations and the risks he presents to the community. The court sentenced Hunter to twenty-four months' imprisonment, followed by two years of supervised release with the following special conditions:

> One, the defendant shall participate in and successfully complete a program of testing and/or treatment for drug abuse . . . as approved by the probation officer until such time as the defendant is released from the program by the probation officer.
>
> The defendant shall abstain from the use of alcohol or other intoxicants during the course of treatment and shall pay the costs of treatment as directed by the probation officer.

---

[3] There is a typographical error in the hearing transcript, stating that Hunter's imprisonment range under the Chapter 7 policy statements was "*18* to 14 months." R., Vol. 2 at 28 (emphasis added).

No. 2, the defendant shall ingest monitored Antabuse, if not medically contraindicated.

3, the defendant shall obtain and maintain lawful and gainful employment within 60 days of his release, following his release from custody of the Bureau of Prisons.

R., Vol. 2 at 29-30. The district court imposed the same special conditions as had been recommended by the probation officer in the Sentencing Recommendation. After advising Hunter of his right to appeal, the court stated it was in recess.

## II. Discussion

A sentence imposed after revocation of supervised release is governed by 18 U.S.C. § 3583(e)(3) and the policy statements in Chapter 7 of the Guidelines Manual. Our review of a district court's revocation sentence is deferential. *United States v. McBride*, 633 F.3d 1229, 1231-32 (10th Cir. 2011).

> We will not reverse a revocation sentence imposed by the district court if it can be determined from the record to have been reasoned and reasonable. Under our current nomenclature, a "reasoned" sentence is one that is "procedurally reasonable"; and a "reasonable" sentence is one that is "substantively reasonable." To say that a district court acted reasonably–either procedurally or substantively–is to say that it did not abuse its discretion.

*Id.* at 1232 (quotation, citation and brackets omitted). Hunter argues that his sentence is both procedurally and substantively unreasonable.

### A. Procedural Reasonableness

"In reviewing a criminal defendant's sentence for procedural reasonableness, we determine whether the district court committed any error in

calculating or explaining the sentence." *United States v. Martinez*, 610 F.3d 1216, 1223 (10th Cir. 2010) (quotation omitted). We must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guideline range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Regan*, 627 F.3d 1348, 1352 (10th Cir. 2010) (quotation omitted).

Hunter contends that the district court erred in several ways: (1) in calculating the applicable advisory imprisonment range; (2) in failing to adequately explain its reasons for imposing a sentence in excess of that range; (3) in failing to adequately explain its reasons for imposing, and otherwise erring in imposing, special conditions of supervised release; and (4) in failing to include its reasons for exceeding the advisory range in its written order of judgment.

### 1. Plain Error Review

The government argues that Hunter's procedural claims should be reviewed only for plain error because he failed to raise them in the district court. *See United States v. Robertson*, 568 F.3d 1203, 1209 (10th Cir. 2009) ("Fairness and judicial efficiency demand that litigants notify the district court of a procedural sentencing error with reasonable specificity, thereby providing that court the opportunity to correct its action in the first instance.") Hunter responds that plain error review is not appropriate here because his counsel was not given an

opportunity to object. *See id.* at 1209 n.3. ("Plain error review only applies in instances in which a defendant has been given, but has not taken advantage of, an opportunity to voice his or her objection." (quotation omitted)). Hunter maintains that because his appeal issues relate to the district court's pronouncement of his sentence, an objection was not ripe until the court concluded its statement of reasons. And he argues that the court's failure at that point to pause or invite further comments before adjourning the sentencing hearing precluded his counsel from raising any further objections.

We disagree. Initially, the district court's calculation of Hunter's advisory sentencing range and the special conditions of supervised release that the district court imposed were identical to the probation officer's sentencing recommendations. Hunter had an opportunity to raise his objections in response to the Sentencing Recommendation before the hearing, or during the hearing prior to the district court pronouncing his sentence. *See* Fed. R. Crim. P. 32(f)(1) & (i)(1)(C)-(D) (permitting objections to pre-sentence report before and during hearing); *see also United States v. Mendoza*, 543 F.3d 1186, 1195 (10th Cir. 2008) (noting some forms of sentencing error can be preserved by written objections to pre-sentencing report or through oral objection at hearing). Hunter did not need a "crystal ball," as he asserts, to raise an objection to the proposed sentencing range calculation and the special conditions that the district court ultimately adopted.

-8-

He is correct, however, that an objection related to the district court's verbal statement of reasons must follow the court's pronouncement of sentence. But he has not shown that his counsel had no opportunity to object at that time. Although it is not clear from the record whether the court paused before announcing that the court was in recess, it is true that the court did not solicit further comments from counsel at that time. We have held, however, that

> a trial judge is not required to specifically elicit objections after announcing a sentence. Competent professionals do not require such gratuitous superintendence; as long as there is a fair opportunity to register an objection, ask for an explanation or request factual findings, counsel must take the initiative thereby insuring that silence is not mistaken for acceptance.

*United States v. Steele*, 603 F.3d 803, 807 (10th Cir. 2010). Hunter's counsel did not take the initiative to ask the district court to reopen the hearing in order to make a record of her objections related to the court's statement of reasons. Hunter does not point to any evidence that his counsel lacked a fair opportunity to register an objection. This is not a case where counsel tried to raise an objection but was interrupted by the court and told that the "matter is done." *United States v. Middagh*, 594 F.3d 1291, 1293 (10th Cir. 2010). Nor did the court indicate that an objection to the adequacy of its statement of reasons would be futile. *See United States v. Algarate-Valencia*, 550 F.3d 1238, 1243 (10th Cir. 2008). Therefore, we will review for plain error Hunter's claims regarding adequacy of the district court's statement of reasons.

Hunter also contends that his counsel had no opportunity to object to the district court's failure to include a statement of reasons for exceeding the advisory imprisonment range in its written order of judgment. "Unlike other forms of sentencing error, . . . failure to enter a written statement of reasons becomes apparent to the parties only after the court enters its final judgment regarding the sentence imposed." *Mendoza*, 543 F.3d at 1195. But we have recognized that "[Fed. R. Crim. P.] 35(a) allows a party to move for entry of a written statement of reasons, and that such a motion is the proper means of raising and preserving an objection to the court's failure to do so." *Id.* Such a motion must be filed within fourteen days after the oral imposition of sentence. *See* Rule 35(a); *see also Mendoza*, 543 F.3d at 1195 n.7 (noting "sentence is formally imposed at the point when the district court announces it from the bench").[4] The district court announced Hunter's sentence on October 25, 2010, and it entered its written order of judgment on November 4, 2010. Hunter could have, but failed to file a Rule 35(a) motion during the remainder of the fourteen-day period. Therefore, we review only for plain error his claim that the

---

[4] When we decided *Mendoza*, the time period for filing a Rule 35(a) motion was within seven days after sentencing, but the Rule was amended in 2009 to extend the period to fourteen days. *See* Rule 35(a) advisory committee's note.

-10-

district court failed to include a statement of reasons for exceeding the advisory range in its written order of judgment.[5]

In order to succeed under this standard of review, Hunter must show "(1) error, (2) that is plain, (3) which affects [his] substantial rights and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Mendoza*, 543 F.3d at 1190 (quotation omitted). As we discuss, he cannot overcome these elements.

## 2. Calculation of Advisory Imprisonment Range

Hunter contends that the district court miscalculated his advisory range by failing to use the version of the Guidelines Manual applicable at the time he was sentenced for his initial offense in October 2000. For this proposition, he cites *United States v. Penn*, 601 F.3d 1007, 1008 (10th Cir. 2010), in which we reviewed a district court's imposition of additional supervised release after a term of imprisonment in a revocation proceeding. We stated, "To determine whether the district court erred, we focus on the law in effect at the time of Defendant's initial crime because postrevocation penalties are attributed to the original conviction." *Id.* at 1009 (quotation and brackets omitted); *see also Johnson v.*

---

[5]     Hunter contends that, if his counsel had an opportunity to raise his claims of procedural error in the district court, her failure to do so constituted constitutionally ineffective assistance. We do not reach this issue, which is properly brought in a collateral proceeding. *See United States v. Galloway*, 56 F.3d 1239, 1242 (10th Cir. 1995) (en banc). This is not one of the rare cases where review of the claims on direct appeal is appropriate. *See id.*

*United States*, 529 U.S. 694, 700, 701 (2000) (holding that "postrevocation penalties relate to the original offense" and noting "the serious constitutional questions that would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release").

The government responds that the Guidelines Manual itself directs the district court to apply the version applicable at the time of sentencing, unless such application would violate the Ex Post Facto Clause. *See* § 1B1.11(a)-(b)(1); *United States v. Owens*, 70 F.3d 1118, 1130 (10th Cir. 1995). The government notes that Hunter has not raised any ex post facto issue with regard to use of the policy statements applicable at the time of his sentencing following revocation of supervised release.

We need not decide what version of the Guidelines Manual should have been applied in Hunter's revocation proceeding because he does not claim that his advisory range would be different as calculated under an earlier version. The advisory imprisonment ranges for revocation sentences are set forth in a table in § 7B1.4 of the Guidelines Manual. As it relates to his applicable advisory range, the terms of § 7B1.4 remained unchanged from the time of his initial offense in September 1996, to the time of his sentencing on that offense in October 2000, to the date he was sentenced on revocation of his supervised release in October 2010. *Compare* Guidelines Manual § 7B1.4 (effective Nov. 1, 1995); Guidelines

-12-

Manual § 7B1.4 (effective Nov. 1, 1998[6]); and Guidelines Manual § 7B1.4

(effective Nov. 1, 2009). Thus, Hunter cannot show an error which affects his

substantial rights. *See Penn*, 601 F.3d at 1012 ("An error only affects substantial

rights when it is prejudicial, meaning that there is a reasonable probability that,

but for the error claimed, the result of the proceeding would have been different."

(quotations omitted)).

### 3.  Statement of Reasons for
### Twenty-Four Month Sentence

Hunter next contends that the district court failed to explain how it related

the factors in 18 U.S.C. § 3553(a) to the facts underlying his case. Specifically,

he argues the court failed to consider his history and characteristics, including his

criminal history under § 3553(a)(1), and his medical and educational needs under

§ 3553(a)(2)(D).[7] He maintains that the district court "did little more than recite

the language of § 3553(a), without specifically connecting the factors to the facts

of the case." Aplt. Opening Br. at 24.

We disagree. In *Mendoza*, 543 F.3d at 1192, we reversed a defendant's

sentence and remanded because the district court "did not articulate one *fact*

___

[6]

The November 1, 1998 Manual would have been applicable at the time
Hunter was sentenced in October 2000. According to the United States
Sentencing Commission's website, no Manual was published between November
1, 1998 and November 1, 2000. *See* http://www.ussc.gov/guidelines/archives.cfm.

[7]    The district court did expressly consider Hunter's medical condition,
discoid lupus, but rejected it as a mitigating factor.

about Mendoza or his crime" and "[m]uch of the court's discussion was general in nature and unrelated to the specific defendant before it." That is not the case here. The district court provided lengthy remarks focused on Hunter and his individual circumstances. Moreover, in complaining that the district court failed to assess certain § 3553(a) factors as applied to him, Hunter misconstrues the court's duty in considering those factors with regard to a revocation sentence.

> [T]he sentencing court is not required to consider individually each of the factors listed in . . . § 3553(a) before issuing a sentence. A sentencing court need only give the reasons for its action as required by 18 U.S.C. § 3553(c). Thus, when imposing a sentence, a district court need only consider . . . § 3553(a) en masse and state its reasons for imposing a given sentence.

*United States v. Burdex*, 100 F.3d 882, 886 (10th Cir. 1996) (citation and footnote omitted); *see also United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 (10th Cir. 2005) (no "magic words" are required (quotation omitted)).

As to the district court's "specific reason" for imposing a sentence in excess of that recommended by the Chapter 7 policy statements, as required by § 3553(c)(2), Hunter acknowledges that the district court articulated both his repeated violations of the terms of his supervised release and the risks he presents to the community. And Hunter ignores that the district court also found merit in the reasons cited by the probation officer for exceeding the advisory range, including his absconding from supervised release and his total disregard for the court's orders.

Hunter has not shown error, much less plain error, in the district court's discussion of the § 3553(a) factors with regard to his twenty-four-month sentence, or in its statement of specific reasons in support of a sentence in excess of the recommended range, as required by § 3553(c)(2).

### 4. Finding that Hunter Poses a Risk to the Community

Hunter also argues the district court's finding that he poses a risk to the public is not supported by the record. We construe this as a claim that the court's finding was clearly erroneous. *See Regan*, 627 F.3d at 1352 (characterizing a sentence based on clearly erroneous facts as procedural error). While Hunter concedes that driving under the influence causes a risk of injury to others, he asserts that his three-year-old DWAI conviction was too stale to support the court's finding. He also contends that there is no evidence he posed any danger to the public while absconding from supervision for three years, other than his non-compliance with the terms of his supervised release.

We are not persuaded. The district court's consideration of Hunter's "repeated violations of supervised release and the risks he presents to the community," R., Vol. 2 at 29, was not limited to his DWAI conviction. The court also cited his admitted violations of law in possessing and using controlled substances on multiple occasions and his excessive use of alcohol. Nor was the court persuaded by Hunter's argument in mitigation that he had turned his life around while absconding from supervised release for three years. Hunter's

-15-

contention that the record fails to support the district court's finding that he poses a risk to the community is nothing more than a request that we reweigh the evidence and the district court's balance of the § 3553(a) factors. That we cannot do. *See Regan*, 627 F.3d at 1354-55 ("We may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo." (quotation omitted)).

### 5. Special Conditions of Supervised Release

The district court imposed three special conditions of supervised release, requiring (1) that Hunter participate in and complete a drug treatment program and abstain from the use of alcohol or other intoxicants during the course of his treatment; (2) that he ingest Antabuse; and (3) that he obtain lawful and gainful employment within sixty days of his release from prison. Hunter contends that the district court failed to state its reasons on the record for imposing these special conditions of supervised release.

"The district court is required to give reasons on the record for the imposition of special conditions of supervised release. [But t]he court need only provide a generalized statement of its reasoning." *United States v. Hahn*, 551 F.3d 977, 982 (10th Cir. 2008) (citation and quotation omitted). In *Hahn*, we held that the district court's explanation for imposing special conditions, which

referred generally to the defendant's history and characteristics and more specifically to other factors, was sufficient. *See id.* at 983.

Here, before imposing the special conditions related to drug treatment, avoidance of alcohol, and Antabuse, the district court referenced Hunter's admissions that he possessed and used controlled substances on multiple occasions, used alcohol excessively, and failed to participate in a previous drug-treatment program. And in response to Hunter's claim that his discoid lupus made it difficult to obtain and maintain employment, the court stated that he was going to have to deal with his condition and take full responsibility for his life. Unlike in *Hahn*, the district court did not directly tie these reasons to its imposition of the special conditions. We need not decide if the court's failure to do so was error, however, because Hunter fails to show any affect on his substantial rights, as he must do to prevail on plain error review.

Hunter also claims that the district court abused its discretion in imposing two of the special conditions. "[W]hile the sentencing court has broad discretion in setting the conditions of supervised release, those conditions must satisfy [the] statutory requirements laid out in 18 U.S.C. § 3583(d)." *Hahn*, 551 F.3d at 983. We have summarized those statutory requirements as follows:

> [T]he condition must (1) be reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant and (2) involve no greater deprivation of liberty than is reasonably necessary given the needs to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the

-17-

defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* (quotations omitted).

Hunter asserts that the district court abused its discretion in requiring him to obtain and maintain employment within sixty days of his release from prison. He does not expressly contend that this condition failed to satisfy one or more of the statutory requirements. He instead asserts that, although the district court was aware of his efforts to start his own business, the record is ambiguous as to whether he is precluded under this special condition from maintaining self-employment. We construe Hunter's argument as a claim that such a condition would unreasonably restrict his liberty. But we see no such ambiguity in the special condition as imposed by the district court. The requirement that Hunter obtain and maintain employment does not specify a type of employment or explicitly restrict him from pursuing self-employment as long as it is lawful and gainful.

Hunter also argues that, in light of his discoid lupus, the district court should have elicited a medical opinion before imposing a requirement that he take Antabuse. He cites no authority for this proposition. Moreover, the court qualified this requirement with the express condition that it would only apply "if not medically contraindicated." R., Vol. 2 at 30. Hunter has not shown an abuse

-18-

of discretion in the district court's imposition of either of these special conditions.

### 6. Written Statement of Reasons for Upward Departure

Section 3553(c)(2) requires the sentencing court to include a written statement in the order of judgment explaining its specific reasons for imposing a sentence outside the range established by the applicable guidelines or policy statements. *See Mendoza*, 543 F.3d at 1195. Hunter is correct that the district court failed to satisfy that requirement in this case. But as we have found, Hunter made no effort to notify the court of its error by moving for entry of a written statement of reasons under Rule 35(a), and our review is therefore for plain error only.

Hunter has shown an error that is plain. *See Mendoza*, 543 F.3d at 1196. In order to satisfy the third prong of the plain error standard, however, Hunter must demonstrate that the failure to enter a written statement affected his substantial rights by showing "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* (quotation omitted). In other words, "the act of entering a written statement must have had the potential to alter the outcome of the sentence." *Id.* In *Mendoza*, we observed:

> [W]e cannot see how the entry of a written statement of reasons would have such an effect. It is the verbal act of sentencing not its later confirmation in the written order, that formally imposes a sentence. . . . To the extent that the written and verbal statements conflict, it is the verbal that controls.

*Id.* Hunter contends that he was prejudiced by the lack of a written statement because the district court's oral statement was likewise inadequate. But we have rejected his claim that the district court's verbal statement failed to satisfy the requirements of § 3553(c). Because he has not shown that his substantial rights were affected, the district court's failure to enter a written statement of reasons is not reversible error.

## B. Substantive Reasonableness

Hunter's final argument is that his sentence was substantively unreasonable. The substantive component of our review "relates to the length of the resulting sentence." *Steele*, 603 F.3d at 808 (quotation omitted). "A sentence in excess of that recommended by the Chapter 7 policy statements will be upheld if it can be determined from the record to have been reasoned and reasonable." *Id.* at 807 (quotation and brackets omitted). "To say that the district court acted reasonably . . . is to say that it did not abuse its discretion." *McBride*, 633 F.3d at 1232. "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable. We will reverse the district court's determination only if the court exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *Regan*, 627 F.3d at 1352 (citations and quotations omitted).

Hunter contends that his twenty-four-month sentence is unreasonable in light of the totality of his circumstances, which he contends the district failed to

fully consider.  He repeats his arguments about the significance of his discoid lupus.  As we have noted, however, the district court did consider his medical condition, albeit without giving it the weight that Hunter would have liked.  We have also previously addressed his arguments regarding the district court's finding that he poses a risk to the community.  He now also points to the affects of a gun shot wound to his face that he suffered while on his previous term of supervised release.  But the facts underlying that shooting incident, which involved Hunter's excessive use of alcohol, were not entirely favorable to him.

Hunter next asserts that his sentence is unreasonably long because this was his first term of supervision and therefore his "first breach of trust."  Aplt. Opening Br. at 34.  In *Steele*, we stated that "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."  603 F.3d at 809 (quotation omitted).  We then observed that it was the "second breach of trust in a fairly short time" for the defendant in *Steele*, *id.*, because he had violated the conditions of a previous period of supervision, which was revoked, and then violated the terms of a second period, *see id.* at 805.  Although Hunter is correct that he has only violated one term of supervised release, *Steele* did not hold that the only basis for exceeding the recommended sentencing range under the Chapter 7 policy statements is a violation of more than one term of supervised release.

Here, in considering the extent of Hunter's breach of trust, the district court reasonably focused on his total disregard for the court's orders and his absconding from supervision for three years. The court stated:

> When there is supervised release imposed, as there was in this case, that really is an order that emanates from the Court. And what someone [who] was under supervised release has to do, you've got to follow the orders. If you disagree with them, if you have issues with things that are occurring or not occurring to you, you need to affirmatively come to the Court. You can't just walk away, become passive, become inactive, and/or abscond.

R., Vol. 2 at 23-24. Additionally, "[t]he seriousness as well as the persistence of [Hunter's] violations, while not the primary focus, [were] also relevant." *Steele*, 603 F.3d at 809. Hunter's violations were numerous (he admitted to nine) and as in *Steele*, many of them were "not mere technical violations." *Id.* (noting marijuana possession is a violation of the law).[8]

Finally, Hunter argues that his sentence is unreasonably long in relation to the sentences imposed on other defendants who also absconded from supervision. Section 3553(a)(6) requires a sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." But "disparate sentences are allowed

---

[8]    In order to exceed the recommended sentencing range under the Chapter 7 policy statements, the district court was not required, as Hunter contends, to find that the range failed to adequately address the gravity of his criminal history. While that was a factor cited by the district court in *Burdex*, *see* 100 F.3d at 884, the violator's criminal history is not the primary focus, *see Steele*, 603 F.3d at 809.

where the disparity is explicable by the facts on the record." *United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006). And § 3553(a)(6) "requires a district court to take into account only disparities *nationwide* among defendants with similar records and Guideline calculations." *United States v. Martinez*, 610 F.3d 1216, 1228 (10th Cir.) (quotation omitted), *cert. denied*, 131 S. Ct. 543 (2010). Hunter fails to show that the records and the conduct of the defendants in the cases that he cites were similar to his record and conduct. *See United States v. Hansen*, 9 F. App'x 955, 955 (10th Cir. 2001); *United States v. Knight*, 395 F. App'x 292, 293 (7th Cir. 2010). Moreover, he cannot establish a nationwide disparity based on citation of two cases.

Ultimately, Hunter's arguments are an invitation to this court to reweigh the evidence, the § 3553(a) factors, and the district court's "ultimate assessment of the balance between them." *Regan*, 627 F.3d at 1354-55 (quotation omitted). We decline to do so. Hunter has not shown, based on the totality of the circumstances, that the district court abused its discretion in sentencing him to twenty-four months' imprisonment. The court's decision to exceed the recommended sentencing range under the Chapter 7 policy statements did not "exceed[] the bounds of permissible choice, given the facts and the applicable law in the case at hand." *Id.* at 1352 (quotation omitted). Nor has Hunter established plain error with respect to the district court's procedure in imposing his sentence.

-23-

The judgment of the district court is AFFIRMED.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge