FILED
United States Court of Appeals
Tenth Circuit

October 1, 2008

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

# UNITED STATES COURT OF APPEALS

## TENETH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

JESUS MENDOZA, also known as Silva,

Defendant-Appellee.

No. 07-3181

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 02-CR-10074-02-MLB)**

Brent I. Anderson, Assistant United States Attorney, Wichita, Kansas, for the Plaintiff-Appellant.

E. Jay Greeno, Wichita, Kansas, for the Defendant-Appellee.

Before **LUCERO**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

**LUCERO**, Circuit Judge.

Although the United States Sentencing Guidelines ("Guidelines") advise

that defendant-appellee Jesus Mendoza receive a minimum of 324 months'

imprisonment for his drug conviction, the district court varied downward and imposed a 240-month sentence. On appeal, the government urges us to vacate and remand for resentencing, arguing that the district court committed procedural error by (1) declining to give specific reasons for the variance, and (2) failing to enter a written statement of reasons as required by 18 U.S.C. § 3553(c)(2). Reviewing only for plain error, we affirm Mendoza's sentence.

**I**

Jesus Mendoza was arrested after law enforcement officials recovered a cooler containing over 14,000 grams of diluted methamphetamine from a vehicle that had recently left his residence. Along with several coconspirators, Mendoza was indicted on June 5, 2002, for possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), conspiracy to do the same in violation of § 846, and maintaining a place for the purpose of distributing a controlled substance in violation of § 856(a)(1). Mendoza entered a guilty plea to all three counts.

In Mendoza's presentence report ("PSR"), his probation officer calculated a Guidelines base offense level of 38. See U.S.S.G. § 2D1.1. This was increased by two levels for possession of a firearm, § 2D1.1(b)(1), and by another two for acting as a leader or manager, § 3B1.1(c). It was then reduced by three based on Mendoza's acceptance of responsibility, § 3E1.1(a), for a final adjusted offense

level of 39. Because Mendoza had a criminal history category of III, his recommended Guidelines sentencing range was 324-405 months' imprisonment.

Before sentencing, Mendoza moved for a downward departure and submitted a supporting memorandum in which he argued for a decreased sentence because he had endeavored to cooperate with the government. Despite his efforts, he argued, his assistance proved of little help through no fault of his own, leaving him facing a substantially higher sentence than the sentences his codefendants received.[1] After receiving the government's response, which maintained that the disparity was warranted due to his leadership role and greater criminal history, the district court notified counsel that it was contemplating a downward variance to 240 months.

At Mendoza's sentencing hearing in May 2007, the district court heard argument from both Mendoza and the government. Both parties focused on Mendoza's failed attempt to provide the government with substantial assistance and thereby qualify for a downward departure under § 5K1.1 of the Guidelines. The district court, however, declined to consider Mendoza's attempted cooperation, stating "that's not why I'm considering a variance." It then moved on to consider the sentencing factors specified in 18 U.S.C. § 3553(a). In doing so, the court stated:

---

[1] According to Mendoza, three of his coconspirators received sentences of 60, 57, and 48 months' imprisonment. The record does not show whether these individuals were convicted of all charges in the indictment.

I've considered the sentences imposed on the codefendants, which is certainly one of the factors I think under Section 3553, in any event, but in doing so I've considered this Defendant's involvement in the case is certainly far more serious than any of the codefendants. There's no question that this is a very serious offense, or offenses, to which he has entered his pleas. I don't think I need to elaborate on that. This Defendant has a criminal history—certainly not the most serious criminal history that I've seen in similar cases of this nature, but he nevertheless has a criminal history.

Obviously, a sentence in this case has to reflect the seriousness of the offense, promote respect for the law and provide just punishment. I think a 240 month sentence does reflect the seriousness of the offenses, as it were. Whether it promotes respect for the law in this Defendant is only in this Defendant's mind. There's no way for me to know whether this sentence or any other sentence, a life sentence, a death sentence, would promote respect for the law in this Defendant's mind. Hopefully it will promote respect for the law in someone else's mind who might know about the case, although I doubt it.

And so the question boils down to whether this is just punishment. Under the circumstances—and I've only been a judge now for a little over 15 years, not as long as some others—but based on the cases that I've had, I believe that a 20 year sentence does promote—is just punishment, or in the language of the rule—the sentence is sufficient but not greater than necessary to comply. Whether it will afford deterrence to this Defendant, again, it will deter him while he's in custody hopefully. Whether it deters anyone else, I don't know. There's no way to know. Probably not because we continue to have drug offenses in great numbers. It doesn't appear to me that our drug laws are adequately deterring anyone from this type of conduct.

It will protect the public while the Defendant is in custody in any event.

There's nothing in the record to indicate that Defendant needs any educational or vocational training. I can't imagine that he will—I guess if it's available to him and he can somehow manage to get it

while he's in custody, then that's fine; but he's a Mexican citizen and he is going to be deported when this case is over with.

Those are my findings under the statute. I hope I've made a record. Government obviously doesn't agree with me on this, so I'm not going to ask the Government to make a further record.

The court imposed concurrent sentences of 240 months' imprisonment on each of the three counts. Then the court asked, "Anything further?" and counsel for the government replied, "Nothing by the United States, Your Honor." An order of judgment and commitment was entered that day, without an accompanying written statement of reasons for the sentence.

The government appeals Mendoza's sentence, arguing that it is procedurally unreasonable on two grounds: First, the district court failed to give an adequate explanation of its reasons for imposing a downward variance. See 18 U.S.C. § 3553(c)(2). Second, the court failed to record those reasons in a written statement. See id. The government does not, however, challenge the substantive reasonableness of Mendoza's sentence.

## II

### A

Before considering whether the district court's verbal statement of reasons was procedurally adequate, we must determine our standard of review. Ordinarily, we review a district court's sentencing procedure for abuse of discretion, evaluating factual findings for clear error and legal determinations de

novo.  See United States v. Todd, 515 F.3d 1128, 1135 (10th Cir. 2008).  When the party alleging error has not objected in the court below, however, we review only for plain error:  "(1) error, (2) that is plain, (3) which affects the [government's] substantial rights and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings."[2]  United States v. Romero, 491 F.3d 1173, 1178 (10th Cir. 2007); see also Fed. R. Crim. P. 52(b).

In this case, the government objected to the district court's proposed downward variance, both at sentencing and in a pre-sentencing motion, but did so solely on substantive grounds.  A party must specifically object to the district court's procedure in order to preserve that issue for review.  See United States v. Ruiz-Terrazas, 477 F.3d 1196, 1199 (10th Cir. 2007) ("Because Mr. Ruiz-Terrazas did not object to the procedure by which his sentence was determined and explained, we may reverse the district court's judgment only in the presence of plain error."); see also Romero, 491 F.3d at 1176-78 (applying plain error review when a defendant failed to preserve a § 3553(c) objection). The government argues that we should construe its repeated substantive

---

[2] It is a settled proposition in our circuit that the government, like a defendant, may obtain plain error review of an unpreserved claim of error.  See, e.g., United States v. Muñoz-Nava, 524 F.3d 1137, 1147 (10th Cir. 2008).  It is also well-settled that we apply ordinary harmless and plain error review to sentencing errors, even though the sentencing vacatur statute, 18 U.S.C. § 3742(f), would appear on its face to categorically require remand for further sentencing proceedings whenever a sentencing error occurs.  See, e.g., Todd, 515 F.3d at 1139.

- 6 -

objections to the proposed downward variance as somehow encompassing the required procedural objection. But because the government voiced these objections <u>before</u> the court's discussion of the § 3553(a) factors, the objections could not have addressed any procedural deficiency in that explanation. We initially conclude that the government did not raise the procedural sufficiency of the court's verbal statement of reasons.

The government urges that we should nonetheless review for abuse of discretion because the district court foreclosed government counsel from objecting to its sentencing procedure by stating: "I'm not going to ask the Government to make a further record." It is true that "[i]f a party does not have the opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." Fed. R. Crim. P. 51(b). Before ending the hearing, however, the court specifically asked counsel for further comments or objections. "Nothing" was the response. Moreover, the court's statement that the government would not be asked "to make a further record" plainly refers to the government's factual arguments under § 3553(a), which had just been discussed, and not to any other point or objection the government might wish to raise. It is clear from the record that the government was in no way precluded by the court from raising an objection to the sentencing procedure. Accordingly, we review the court's failure to give specific verbal reasons for plain error.

**B**

**1**

On plain error review, we first ask whether the district court committed the alleged error. By statute, when a district court imposes an outside-Guidelines sentence, it must "state in open court . . . the specific reason for the imposition a sentence different from [the Guidelines' recommendation]."[3] 18 U.S.C. § 3553(c)(2); see also Ruiz-Terrazas, 477 F.3d at 1200. In doing so, the court must consider each of the factors enumerated at § 3553(a). Gall v. United States, 128 S. Ct. 586, 596-97 (2007). A district court commits procedural sentencing error when it "fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Id. at 597.

To satisfy the verbalization requirement of § 3553(c)(2), a district court must describe the salient facts of the individual case, including particular features of the defendant or of his crime, and must explain for the record how these facts relate to the § 3553(a) factors. Only by doing so can the sentencing court provide the context required by an appellate court reviewing the sentence for substantive reasonableness. See Rita v. United States, 127 S. Ct. 2456, 2468-69 (2007) (stressing the importance of the district court's reasoning in facilitating appellate review); United States v. Smart, 518 F.3d 800, 808 (10th Cir. 2008) (holding that

---

[3] By contrast, the court is not necessarily required to discuss specific § 3553 factors when imposing a within-Guidelines sentence. See § 3353(c)(1) (requiring only that a sentencing court state "the reason" for selecting a sentence at a particular point within the Guidelines range).

when reviewing for substantive reasonableness, appellate courts must defer to the district court's factual findings and determinations of weight under § 3553(a)).

Before us, the government contends that the sentencing court did little more than recite the § 3553(a) factors, without specifically connecting them to the facts of the case in order to explain why they supported a downward variance. We agree that this constituted error. Although the court's statement contained references to most of the relevant factors,[4] it did not articulate one <u>fact</u> about Mendoza or his crime, other than to note that Mendoza would likely be deported and thus would not benefit from prison educational programs. Much of the court's discussion was general in nature and unrelated to the specific defendant before it. For example, the court expressed general doubt as to the deterrent value of drug sentences. Perhaps the most specific factor the court relied upon was that Mendoza had played a more serious role in the offense than did his codefendants—but this conclusion would actually militate <u>against</u> a downward variance. Because this factor lent no support to the court's decision, we can hardly say that it qualified as a specific reason to vary downward.

Lacking grounding in the particularized facts of the case or Mendoza's specific crime, the court's statements about why it reached a 240-month sentence

[4] The court mentioned the need to reduce sentencing disparity, the seriousness of Mendoza's crime, the need to promote respect for the law and provide just punishment, the need to deter further criminal conduct, and the need to provide Mendoza with education and training during his sentence. <u>See</u> § 3553(a) (listing each of these considerations as a valid sentencing factor).

did not amount to "specific reasons" for a downward variance. The court therefore committed error.

**2**

To warrant reversal on a plain error standard of review, however, this error must also be "clear or obvious under well-settled law." United States v. Trujillo-Terrazas, 405 F.3d 814, 818 (10th Cir. 2005) (quotation omitted). This standard applies to the law in place at the time of review rather than at the time of sentencing. Johnson v. United States, 520 U.S. 461, 468 (1997).

The requirement that a district court explain its specific reasons for a sentence outside the Guidelines is written in the statute itself, and has been since the passage of the Sentencing Reform Act of 1984. See § 3553(c)(2); Pub. L. No. 98-473, § 212, 98 Stat. 1837, 1989 (1984). As the Supreme Court has repeatedly emphasized, the reasoned explanations of sentencing courts play a vital role in the evolution of the entire federal sentencing system. See Gall, 128 S.Ct. at 597 (a sentencing court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing"); Rita, 127 S. Ct. at 2469 (even where no variance is imposed, "[b]y articulating reasons . . . the sentencing judge not only assures reviewing courts (and the public) that the sentencing process is a reasoned process but also helps that process evolve").

Sentencing jurisprudence, both the Supreme Court's and our own, leaves little doubt that a mere allusion to the statutory factors, without an accompanying discussion of their application to the facts at hand, lacks the specificity to satisfy this duty. Although we have only rarely considered a § 3553(c)(2) procedural challenge to a statement of reasons,[5] our extensive case law reviewing substantive reasonableness of sentences illuminates what a "specific" statement should look like.[6] See, e.g., United States v. Scott, 529 F.3d 1290, 1304 (10th Cir. 2008)

---

[5] Our sole post-Booker precedent reviewing a sentence for compliance with § 3553(c)(2) is United States v. Pena-Hermosillo, 522 F.3d 1108 (10th Cir. 2008). In Pena-Hermosillo, we reviewed an "alternative sentence" that the district court imposed in case its original sentence was overturned on appeal. Id. at 1117. As support for this alternative sentence, the district court had stated only that "the same sentence would be imposed even if the advisory guideline range was determined to be properly calculated." Id. Noting the "absence of explanation" supporting the alternative sentence, we concluded that § 3553(c)(2) "requires some explanation beyond a vague statement that the sentence is appropriate under § 3553(a)." Id. Accordingly, we held that "where the district court offers no more than a perfunctory explanation for its alterative holding, it does not satisfy the requirement of procedural reasonableness." Id.

[6] That is not to suggest that facilitating our review is the only function of this procedural requirement. To the contrary, Congress and the Supreme Court have elucidated several other purposes served by the verbalization requirement, including future use by the Bureau of Prisons ("BOP") and the United States Sentencing Commission ("Sentencing Commission"). See § 3553(c) ("The court shall provide a transcription or other appropriate public record of the court's statement of reasons, together with the order of judgment and commitment, to the Probation System and to the Sentencing Commission, and, if the sentence includes a term of imprisonment, to the Bureau of Prisons."); Rita, 127 S. Ct. at 2469 (noting that a "reasoned sentencing judgment . . . can provide relevant information to both the court of appeals and ultimately the Sentencing Commission"); S. Rep. No. 98-225, at 79-80 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3262-63 (justifying § 3553(c) as necessary "to inform the
(continued...)

- 11 -

(noting, in the course of affirming the substantive reasonableness of an outside-Guidelines sentence, that "[t]he district court relied on several factors to justify the variance, laying out its findings orally and in a lengthy written statement of reasons"); Smart, 518 F.3d at 808; see also Gall, 128 S.Ct. at 596-97 (holding that a sentencing judge "must make an individualized assessment based on the facts presented" and must "ensure that the justification [for a variance] is sufficiently compelling to support the degree of the variance").

Besides our many substantive reasonableness cases, we have frequently addressed the procedural reasonableness of a statement of reasons supporting a within-Guidelines sentence, governed by § 3553(c)(1). In these cases, we have generally held that "when the district court adheres to the advisory Guidelines range," § 3553(c)(1) "does not impose upon district courts a duty to engage in . . . particularized analysis." United States v. A.B., 529 F.3d 1275, 1289 (10th Cir. 2008); see also United States v. Verdin-Garcia, 516 F.3d 884, 898 (10th Cir. 2008) (explaining that a district court need not explicitly discuss particular factors left unraised by the parties at sentencing when a within-Guidelines sentence is imposed); United States v. Cereceres-Zavala, 499 F.3d 1211, 1217 (10th Cir. 2007) (holding that § 3553(c)(1) requires only a "general statement noting the

[6](...continued)
defendant and the public of the reasons why the offender is subject to that particular guideline and in order to guide probation officers and prison officials to develop a program to meet his needs").

- 12 -

appropriate range and how it was calculated" (quotation omitted)); Ruiz-Terrazas, 477 F.3d at 1201. By negative implication, these cases suggest that a "specific" statement pursuant to § 3553(c)(2) must be particularized rather than general and must address the facts of the individual case. See, e.g., United States v. Angel-Guzman, 506 F.3d 1007, 1016-17 (10th Cir. 2007) (contrasting the verbalization requirement of § 3553(c)(1) with the specific verbalization requirement of § 3553(c)(2)); Ruiz-Terrazas, 477 F.3d at 1200 ("We do not feel at liberty to ignore Congress's requirement of a greater degree of explication for sentences falling within the scope of [§ 3553](c)(2) than those falling within the ambit of (c)(1); the decision by a coordinate branch of government to use the term 'with specificity' in one portion of the statute but not another is entitled to effect and our respect.").

Taken together, the plain language of the statute and the aforementioned cases leave no room for doubt that the district court's error here is plain.

**3**

Despite the district court's error, we will not remand unless it resulted in prejudice to the government. Under the plain error standard, we reverse only when an error impacts a party's substantial rights, asking "whether there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." United States v. Hasan, 526 F.3d 653, 665 (10th Cir. 2008) (quotation omitted); see also Trujillo-Terrazas, 405 F.3d at 819. The party

that failed to raise the issue below bears the burden of establishing this probability.  <u>Romero</u>, 491 F.3d at 1179.  When that party fails to advance any argument that its substantial rights were affected, it fails to satisfy this burden.  <u>Id.</u>

We are not told by the government how the instant error affected substantial rights.  It simply posits that because the district court failed to articulate reasons, the very imposition of a downward variance demonstrates prejudice.  But the government does not explain why, on the facts of this particular case, a more detailed reasoning process might have led the court to select a higher sentence.  <u>Cf.</u> <u>Trujillo-Terrazas</u>, 405 F.3d at 819-20 (explaining at length why a fuller consideration of the § 3553(a) factors might have led the sentencing court to reach a different result).  Quite to the contrary, the government apparently asks us to assume prejudice in every instance involving noncompliance with the verbal statement requirement of § 3553(c)(2).

This approach would swallow the third prong of plain error review.  If a party considers the districts court's § 3553(c)(2) statement of reasons insufficient, it must either timely object during the sentencing hearing or satisfy plain error review by explaining how the outcome might have been different had the district court provided a procedurally adequate verbal explanation for its choice of sentence.  Absent one of these circumstances, we will not remand for such an explanation.

Assuredly, the government is not required to argue that a sentence is substantively unreasonable under § 3553(a) in order to meet its burden of showing prejudice. Because district courts have the discretion to impose a range of sentences in any particular case, it is enough to show that the procedural error likely would have shifted the court's choice within that range. See, e.g., Trujillo-Terrazas, 405 F.3d at 820 (holding that prejudice was established because the district court's "expression of sympathy" for the defendant, combined with the fact that the § 3553(a) factors could reasonably support a lower sentence, implied that the court might have imposed a lesser sentence in the absence of legal error).

In this case, the record fails to provide the slightest indication that the district court would have imposed a higher sentence had it fully satisfied the requirements of § 3553(c)(2). Advancing but a bare assertion that the outcome below was somehow affected by the district court's insufficient statement of reasons, the government fails to persuade us of any such effect. We therefore have no basis upon which to conclude that the district court's procedural error affected substantial rights.

## III

### A

This brings us to the second procedural requirement for imposition of an outside-Guidelines sentence: The district court must include a written statement in the order of judgment and commitment that explains its specific reasons for the

departure or variance. § 3553(c)(2). Again, the court did not do so in this case. Before deciding whether this constitutes reversible error, we must determine the proper standard of appellate review.

As the government readily admits, it made no effort to notify the district court of its failure to comply with the written statement requirement prior to the filing of this appeal. Generally, when a party fails to object to an error before the district court, we review only for plain error. See Romero, 491 F.3d at 1176-78. However, a party's failure to preserve error is excused if it did not "have an opportunity to object." Fed. R. Crim. P. 51(b).

Unlike other forms of sentencing error, which can be preserved for appellate review through written objections to the PSR or an oral objection during the sentencing hearing, failure to enter a written statement of reasons becomes apparent to the parties only after the court enters its final judgment regarding the sentence imposed. The Rules of Criminal Procedure, however, provide a mechanism for alerting the district court of the need to enter a written statement. After a sentence is imposed, the district court is authorized, for seven days, to correct "arithmetical, technical, or other clear error" in the sentence. Fed. R. Crim. P. 35(a); see also United States v. Green, 405 F.3d 1180, 1185 (10th Cir. 2005).

The Second Circuit has held that Rule 35(a) allows a party to move for entry of a written statement of reasons, and that such a motion is the proper

means of raising and preserving an objection to the court's failure to do so.

United States v. Verkhoglyad, 516 F.3d 122, 134 n.8 (2d Cir. 2008).  Given the unambiguous language of § 3553(c)(2), we conclude that failure to include the specific reasons for a variance in the written order of judgment and commitment constitutes "clear error" for purposes of Rule 35(a).  Had the government called the court's attention to its error by utilizing Rule 35(a), the district court undoubtedly would have dealt with the problem.

Authority to correct error pursuant to Rule 35(a) was available at the time of entry of the written order, which the court entered on the day of sentencing.[7]

---

[7] A sentence is formally imposed at the point when the district court announces it from the bench, and not at the point when the written judgment of order and commitment is entered—meaning that Rule 35's seven-day period runs from the oral imposition of the sentence.  Fed. R. Crim. P. 35(c); see also Green, 405 F.3d at 1186.  Under our current precedent, this period may not be extended by any action of the parties or the court, even by the filing of a motion or scheduling of briefing or argument on point.  Green, 405 F.3d at 1186.  Because there is no rule requiring a district court to enter its written order of judgment and commitment within seven days of oral sentencing, the rule in Green means that Rule 35(a) may not be available as a mechanism for preserving every § 3553(c)(2) error.

Nonetheless, Rule 35(a) was clearly available in this case, and the government has not argued that it should be excused from the usual preservation requirement.  We therefore do not decide whether plain error review could apply in a similar future case if a court entered its written order, omitting a statement of reasons, outside the seven-day window for correction under Rule 35.  We do note for such future cases that recent Supreme Court jurisprudence raises the question of whether Rule 35(a)'s time limit is indeed jurisdictional as we held in Green, or is instead a non-jurisdictional claims-processing rule.  See, e.g., Bowles v. Russell, 127 S. Ct. 2360, 2364, 2366 (2007) (differentiating truly jurisdictional rules from nonjurisdictional claims-processing rules which may be forfeited or subject to equitable exceptions).

Because the government failed to preserve its objection by resorting to a Rule 35(a) motion, we conclude that the error was forfeited.  Thus, we again review solely for plain error.

**B**

Applying the four prong standard discussed above, we necessarily conclude that the district court committed plain error by neglecting to enter a written statement of reasons, thereby satisfying the first two prongs of our inquiry.  Like a verbal statement, a written statement is also mandatory under § 3553(c)(2), and this requirement admits of no ambiguity even without interpreting case law on point.[8]

We return to the third prong of the plain error standard.  We consider whether the failure to enter a written statement affected the government's substantial rights, asking "whether there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." Hasan, 526 F.3d at 664-65 (quotation omitted).  In order to meet this standard, the act of entering a written statement must have had the potential to alter the outcome of the sentence.

Based on the arguments before us, we cannot see how the entry of a written statement of reasons would have such an effect.  It is the verbal act of sentencing,

---

[8] In contrast to the government's challenge to the specificity of the district court's verbal statement, this challenge involves an absolute failure to enter any written statement (specific or otherwise).

not its later confirmation in the written order, that formally imposes a sentence. Green, 405 F.3d at 1186. Consequently, a sentencing court may not alter a sentence for substantive reasons after it has been verbally imposed; even Rule 35(a) does not provide a basis for a court to simply reconsider its sentencing decision. Fed. R. Crim. P. 35 advisory committee's notes ("[Rule 35(a)] is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence."); see also 18 U.S.C. § 3582(c) (forbidding modification of term of imprisonment once imposed except (1) upon motion of the Bureau of Prisons, (2) pursuant to Rule 35, or (3) based upon subsequent changes to the Guidelines and accompanying policy statements); Green, 405 F.3d at 1185-86. To the extent that the written and verbal statements conflict, it is the verbal that controls. United States v. Townsend, 33 F.3d 1230, 1231 (10th Cir. 1994).

Given this rule, and failing contrary argument from the government, we cannot conclude that the government has met its burden of showing that its substantial rights were affected. We recognize that Congress specifically added the writing requirement to § 3553(c)(2) in a 2003 amendment and gave appellate courts the power to remand upon a district court's failure to comply. See Pub. L. No. 108-21, § 401, 117 Stat. 650, 669 (2003). Nonetheless, this does not mean we must presume that substantial rights are necessarily affected. The district

court's failure to enter a written statement of reasons is therefore not reversible error.[9]

## IV

For the foregoing reasons, we **AFFIRM** the sentence.

---

[9] At oral argument, the parties discussed the possibility that certain language in 18 U.S.C. § 3742(f)(2) limits our authority to vacate and remand when a sentencing court has violated the § 3553(c)(2) writing requirement. See § 3742(f)(2)(A) & (B) (instructing an appellate court to vacate and remand for certain forms of sentencing error, including a writing failure, if the sentence is appealed by the defendant and is "too high" or is appealed by the government and is "too low"); see also United States v. Jones, 460 F.3d 191, 197 n.2 (2d Cir. 2006); id. at 198-201 (Walker, C.J., dissenting). We have no cause to interpret this portion of § 3742(f)(2) today. Given the absence of reversible error, the issue is not before us.

Further, although our sister circuits have sometimes remanded for entry of a written statement, without vacatur of the underlying sentence, even when the plain error standard was not met, e.g., Verkhoglyad, 516 F.3d at 133-34, we see no reason to do so here. First, neither party requested such a remedy. Second, the writing requirement exists to benefit the appellate court, the BOP, and the Sentencing Commission. § 3553(c); see also supra note 7. At least two of those entities would not benefit from remand: this appeal is now over, and the district court specifically declined to issue any instructions to the BOP regarding treatment or training for Mendoza. Moreover, although the Sentencing Commission would assuredly benefit to some degree from the entry of a statement of reasons, the Commission is typically subject to the whims of parties regarding whether an appeal is taken to correct an insufficient statement in any given case, so we do not view its interest as sufficient to justify sua sponte adoption of an automatic remand rule. We do not decide whether remand without vacatur would be appropriate or available in another case.

- 20 -