**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 29, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSHUA SEDILLO,

    Defendant - Appellant.

No. 17-2173
(D.C. No. 1:16-CR-02703-MCA-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **EBEL**, and **PHILLIPS**, Circuit Judges.
_____

After Joshua Sedillo pleaded guilty to two counts of distributing

methamphetamine, the district court sentenced him to 140 months in prison, followed by

a five-year term of supervised release with alternative conditions: either marry the mother

of his children or establish an account to pay child support. Sedillo now appeals, arguing

that his 140-month sentence is both procedurally and substantively unreasonable and that

the order of supervision exceeds the court's authority and violates his substantive-due-

process rights. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm Sedillo's

sentence, but remand for the court to clarify its supervised release order.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**BACKGROUND**

In 2016, with the help of confidential informants, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) organized a large-scale sting operation in Albuquerque, New Mexico to buy guns and drugs, resulting in over 100 arrests. Among those arrested was Sedillo, who sold a combined total of about five ounces of methamphetamine to an undercover ATF agent in two separate sales.[1] The agents arranged a third sale, this time for more drugs and a firearm. When Sedillo arrived with the requested goods, the agents arrested him. In his vehicle, officers discovered a .40 caliber handgun and ammunition, 125 grams of methamphetamine, and twenty grams of heroin.

Sedillo pleaded guilty to two counts of distribution of fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). The probation office then prepared a presentence investigation report (PSR), which recommended a total offense level of 29.[2] This, combined with his category V criminal history, led to an advisory guidelines range of 140 to 175 months. Based on Sedillo's background, the probation office advised that a variance below that range "may be warranted."

---

[1] The methamphetamine in the first sale was 97% pure, while that of the second sale was 88% pure.

[2] The PSR calculated his base offense level as 30 under U.S.S.G. § 2D1.1(a)(5), because of the purity and amount of the methamphetamine and 19 grams of heroin included within relevant conduct. The PSR added two levels because the offense involved a firearm, but subtracted three levels because Sedillo had timely accepted responsibility under U.S.S.G. § 3E1.1(a), (b).

Sedillo then moved for a downward variance. In support, he argued that his life hardships and disadvantages—which included growing up in a family of heroin users and losing his father during high school—warranted a shorter sentence. Sedillo further argued that ATF had designed its sting operation to entice drug *users* like him into becoming drug *dealers* by paying more than street value for the drugs. He noted that instead of arresting him after the first sale or using him to find a supplier, ATF had arranged two more sales with him, "ratcheting up the drug amount, and in turn, the sentencing guidelines."[3] The Government opposed Sedillo's variance motion, arguing that Sedillo's sporadic employment created a strong inference that he did, in fact, have a history of drug dealing, because he must have "supplemented his meager income" with drug-dealing earnings. R. vol. 1 at 29–36.

Before sentencing, Sedillo's case was reassigned to a visiting judge from Midland, Texas. Sedillo filed a motion under seal requesting that the case be reassigned back to the original judge, citing her familiarity with ATF's controversial sting operation.[4] In a

---

[3] Sedillo cited multiple court rulings finding evidence that ATF's sting operation disproportionately targeted minorities. *See e.g.*, *United States v. Casanova*, No. CR 16-2917, doc. 57 at *4 (D.N.M. filed June 30, 2016) (order granting discovery) ("[T]he statistical evidence provided by Defendant constitutes reliable demographic information demonstrating that the operation resulted in a much higher percentage of African-American defendants than the usual rate of occurrence, in [this district], of drug and firearm arrests among that group. The Court further finds that the methods used by ATF in conducting this operation were likely to lead to a higher percentage of minority defendants, but that ATF declined to make use of any policies or training designed to counteract that effect.").

[4] The original judge, Chief Judge Armijo, recently granted, in part, a "Motion to Compel Discovery Pertaining to Claim of Selective Enforcement" in a different

summary order, the original judge denied the motion, leaving it to the visiting judge to preside over Sedillo's sentencing.

At the sentencing hearing, the court asked whether Sedillo had any objections to the PSR, and he responded that he had incorporated some "informal objections" into his variance motion, but explained that "they're not specific objections that [he] filed with the Court."[5] R. vol. 2 at 27. Seeking clarity, the court asked, "So do you have any objections to the report?" *Id.* Sedillo answered no. The court then heard arguments on Sedillo's variance motion. Sedillo reiterated the arguments from his downward-variance memorandum, relying on his family struggles and ATF's manipulating his drug weight with repeated methamphetamine purchases from him. To that end, he highlighted several federal cases arising from the same sting operation in which the court had granted substantial downward variances. In sum, he argued that a nearly twelve-year sentence was unreasonable for someone with no history of drug dealing, whom the ATF had lured into making easy cash. Questioning this premise, the court interjected to ask, "So when [Sedillo] was arrested in El Paso County, Texas [in 2013] for possession of 50 to 2,000 pounds of marijuana, that was just for personal use?" *Id.* at 30–31. Sedillo responded that he had been convicted of possession in that case, not distribution.

---

case arising from the same sting. *See United States v. Jackson*, No. 16-CR-2362 MCA, 2018 WL 748372, doc. 73 (D.N.M. Feb. 7, 2018).

[5] Sedillo made just one formal objection to the PSR, complaining that it overrepresented his 2009 robbery conviction, because, although he took property from the victim by force, he neither used a weapon nor injured the victim.

Sedillo also read a letter to the court, in which he acknowledged his mistakes, recounted his longtime struggles with addiction and poverty, and promised to rehabilitate himself in prison. He emphasized that he is a father of four—one "stepchild" and one biological child from a previous relationship, and two biological children with his current fiancée—and that, upon regaining his freedom, he intends to make music and start an outreach program for children who grew up in similar circumstances.

After Sedillo finished reading his letter, the court asked, "Now, you've never married any of the women you have babies with, have you?" R. vol. 2 at 43. Sedillo acknowledged that he had not, saying that he didn't love the mother of his first-born child, but that he planned to marry his current fiancée, the mother of his younger two children. *Id.* The court then asked, "Do you pay child support for your first child?" *Id.* at 44. Sedillo responded that he did not, but that despite being incarcerated for much of the child's life, he did "what he could for her while [he] was out." *Id.*

Ultimately, the court denied Sedillo's motion for a downward variance and sentenced him to 140 months of imprisonment, the bottom of the advisory guidelines range. Specifically, the court found:

> The defendant has five felony convictions between 2007 and 2013, resulting in a criminal history category of V. The felony convictions are related to drug possession, possession of a firearm, and robbery. The defendant's convictions occurred in close proximity to each other and within ten years of the instant offense. After reviewing the defendant's criminal history, it appears his criminal history category is appropriately categorized. In addition, the defendant's offense involved a good amount of drugs. And therefore, the Court is not going to grant a downward departure pursuant to [U.S.S.G. § 4A1.3]. I'm not departing from the recommended sentence. Pursuant to the Sentencing Reform Act of 1984, which I have considered in an advisory capacity, and the sentencing factors set forth in [18 U.S.C. §

3553(a)], which I have considered in arriving at a reasonable sentence, I do find the guideline range in this case to be fair and reasonable.

*Id.* The court then ordered that, within sixty days of his release from custody, Sedillo "shall either marry the mother of [his] children, or . . . establish an account for the payment of child support for [his] minor children with the proper [state] agency." *Id.* at 55. The court styled its written judgment differently, however, ordering Sedillo to either "comply with child support requirements or marry the mother of his children within 60 days of being released from custody." R. vol. 1 at 76.

Sedillo objected to the reasonableness of his sentence and the legality of the marry-or-pay-support condition of supervised release. As to the sentence, he argued that it was procedurally unreasonable—because the visiting judge was not familiar with the ongoing litigation about the alleged impropriety of ATF's sting operation—and substantively unreasonable—because he had "never done more than two years in prison" and his crime "literally was created by the government." R. vol. 2 at 58–59. As to the conditions of supervised release, Sedillo argued that the court did not have the authority to order someone to marry another person. *Id.* at 59. The court responded that marrying the mother of his children was but one of two options, and that, if he did not like that option, "he [wa]s required under law to [pay child support] in the state of New Mexico." *Id.* Sedillo countered that, even assuming he were liable for child support, "there are state procedures that [c]ould be pursued and wages could be garnished. This isn't the place to litigate the child support." *Id.* at 60. The court overruled his objection. *Id.* Sedillo now appeals.

6

**DISCUSSION**

Sedillo appeals his sentence, arguing that it's both procedurally and substantively unreasonable. He also appeals the court's supervised-release order, contending that it exceeds the court's authority and violates his substantive-due-process rights. But before turning to the merits, we must determine the standard of review applicable to each issue.

## I. Standard of Review

The parties agree that we review Sedillo's challenges to the substantive reasonableness of the sentence and the conditions of his supervised-release order for an abuse of discretion. But the parties disagree about which standard of review governs his procedural-reasonableness claims.

When a defendant has preserved his procedural- or substantive-reasonableness claims in the trial court, we generally review them under the abuse-of-discretion standard. *United States v. Sanchez-Leon*, 764 F.3d 1248, 1262 (10th Cir. 2014). In doing so, "we review de novo the district court's legal conclusions regarding the [g]uidelines and review its factual findings for clear error." *Id*. (internal quotations omitted). If the defendant failed to preserve those claims, we review for plain error. *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007). To preserve a procedural-reasonableness challenge to the sentence, a party must "contemporaneous[ly]" raise it. *Id.* at 1177. Doing so "alert[s] the district court and opposing counsel, so that [the] potential error can be corrected, obviating any need for an appeal." *Id*. (internal quotations omitted).

Sedillo's procedural-reasonableness claims identify three purported errors by the district court: (1) "not acknowledging a reasonable request for a downward variance and

not explaining why it considered the request irrelevant to the proceedings"; (2) "violating [Rule 32 of the Federal Rules of Criminal Procedure] by not resolving the parties' disagreement over whether Sedillo was selling narcotics before the undercover agent asked"; and (3) "not adhering to 18 U.S.C. § 3553(c) [by not] stating its reasons for imposing a particular sentence."[6] Sedillo's Opening Br. at 1–2.

The Government contends that plain-error review should apply because Sedillo failed to raise these issues after the court pronounced its sentence. Sedillo counters that abuse-of-discretion review applies because he raised them in his downward-variance motion and had no duty to re-raise the same objections after receiving the sentence. Here is what Sedillo said post-sentence:

> Well, I think procedurally, a judge that is already familiar with this case and is familiar with the ATF cases and the ATF litigation is the appropriate judge to hear the case. It's impossible for me to reproduce for you the entire ATF sting litigation in a way that would make you understand how offensive the community—by that, I mean the legal and actual community—have found that operation, and I think that is relevant to the sentencing in Mr. Sedillo's case.

---

[6] Although not listed in his "statement of the issues," Sedillo also asserts in the body of his brief that the district court applied an incorrect legal standard. Sedillo's Opening Br. at 15–17. Specifically, he claims that the court erroneously "singl[ed] out the advisory guideline range as the presumptively reasonable range," effectively forcing him "to rebut that presumption at sentencing." *Id*. at 16. Sedillo is generally correct that district courts err when they presume that a sentence within the guidelines is reasonable. *See United States v. Conlan*, 500 F.3d 1167, 1168–69 (10th Cir. 2007). But unlike in *Conlan*, where the district court stated that "the guideline recommendations . . . are presumptively reasonable," *id.*, the district court here applied no such presumption. Rather, the court stated, "I do find the guideline range in this case to be fair and reasonable." R. vol. 2 at 52–53.

R. vol. 2 at 58. His use of the word "procedurally" notwithstanding, we agree with the Government that Sedillo did not sufficiently preserve his procedural reasonableness claim with this objection.

The crux of Sedillo's procedural-reasonableness claim is that the district court failed to *explain the reasons* for his sentence, not that the court ultimately rejected his arguments for a downward variance. As we explained in a similar case:

> Defendant's complaint on appeal is not that the court rejected his arguments but that the court did not adequately *explain* why it acted as it did. To preserve that complaint for appeal, Defendant needed to alert the court that its explanation was inadequate, which ordinarily would require an objection after the court had rendered sentence. The court could then cure any error by offering the necessary explanation.

*United States v. Gantt*, 679 F.3d 1240, 1247 (10th Cir. 2012). After the court announced its sentence, Sedillo could have objected to its failure to address his arguments supporting leniency, its failure to resolve the purported dispute over Sedillo's history of drug distribution, or its failure to expressly apply the § 3553(a) factors. *See id.* Had Sedillo lodged a contemporaneous objection, the court could have immediately remedied the errors, "obviating any need for an appeal" on these issues. *See Romero*, 491 F.3d at 1177. But Sedillo's only specific objection was to the court's unfamiliarity with the ATF litigation. And this objection did not adequately preserve the procedural-reasonableness claims he raises on appeal.

Sedillo's reliance on *United States v. Lopez-Avila*, 665 F.3d 1216 (10th Cir. 2011) is misplaced. In that case, the defendant moved for a downward variance because of sentencing disparities between jurisdictions that use a "fast-track" program and those that

9

do not.[7] *Id*. at 1217. The court denied the motion on grounds that "it could not consider [such] disparities" when deciding the sentence. *Id.* On appeal, the Government argued that plain-error review applied "because [the defendant] did not renew his argument for a downward variance after the judge had pronounced sentence." *Id.* at 1217–18. We rejected this argument because "the [district] judge was familiar with the argument" and addressed it, and "requir[ing] defense counsel to perform a superfluous and futile gesture [of re-raising the objection] would take the time of the district courts for this meaningless charade." *Id.* In other words, *Lopez-Avila* differs from Sedillo's case because there the defendant appealed the district court's substantive decision, not the method by which the court arrived at its substantive decision. A contemporaneous objection would have served no purpose in *Lopez-Avila*; the district court would have simply restated its conclusion. By contrast, a contemporaneous objection here would have given the court an opportunity to explain its reasoning. *See id.*; *see also United States v. Vargas-Ortega*, No. 17-1433, 2018 WL 2945770, at *1 (10th Cir. June 11, 2018) ("[W]e have not required a contemporaneous objection when the defendant is appealing the district court's categorical refusal to consider an argument previously made in a motion for a downward variance [because doing so] would simply require a defendant to repeat what had already been stated in the motion.").

---

[7] "Fast-track" agreements allow prosecutors to "ask[] a defendant to waive indictment, trial, and an appeal" in exchange for recommending a downward departure from the guidelines range. *United States v. Ruiz*, 536 U.S. 622, 625 (2002).

In sum, because Sedillo failed to adequately preserve his procedural-reasonableness claims, we review them for plain error.

**II. Sedillo's Sentence is Procedurally and Substantively Reasonable**

"When reviewing a sentencing challenge, we evaluate sentences imposed by the district court for reasonableness," which "has both substanti[ve] and procedural components." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007) (internal quotations omitted). "Procedural reasonableness involves using the proper method to calculate the sentence." *Id.* "Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Id.*

**A. Procedural Reasonableness**

As explained above, plain-error review applies to Sedillo's procedural-reasonableness claims. "We find plain error only when there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Romero*, 491 F.3d at 1178. Sedillo bears the burden to prove each element. *Id.* After reviewing the record and the relevant law, we conclude that he has not met this burden.

**1. The district court did not plainly err by failing to explain its reasons for denying Sedillo's request for a downward variance.**

Sedillo first argues that the district court erred by giving only "a truncated explanation" of "why [his] variance argument was not relevant to its sentencing deliberation." Sedillo's Opening Br. at 18–19. District courts have a duty "to adequately

11

explain the chosen sentence." *Sanchez-Leon*, 764 F.3d at 1262 (internal quotations omitted). To fulfill this obligation, the sentencing court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising his [or her] own legal decisionmaking authority." *Id.* (quoting *Rita v. United States,* 551 U.S. 338, 356 (2007)). But when, as here, the court imposes a within-guidelines sentence, "it must provide only a general statement of its reasons, and need not explicitly refer to either the § 3553(a) factors or respond to every argument for leniency that it rejects in arriving at a reasonable sentence." *Id.* (internal quotations omitted).

Here, the district court briefly summarized Sedillo's criminal history and stated, "After reviewing the defendant's criminal history, it appears [Sedillo's] criminal history category is appropriately categorized. In addition, the defendant's offense involved a good amount of drugs." R. vol. 2 at 52–53. To be sure, such a cursory statement does not serve as a glowing example of sentencing transparency. But because the sentence was within the guidelines range, the court needed to provide only a "general statement of its reasons," not "respond to every argument for leniency." *See Sanchez-Leon*, 764 F.3d at 1262. Because the district court provided a general statement of its reasons and sentenced Sedillo at the bottom of his guidelines range, Sedillo has failed to establish any error, much less a plain error that affects "substantial rights" or "the fairness, integrity, or public reputation of judicial proceedings." *See Romero*, 491 F.3d at 1178.

**2. The district court did not plainly err by failing to resolve the parties' disagreement about whether Sedillo had sold drugs in the past.**

12

Sedillo next challenges the district court's failure to resolve the dispute about whether Sedillo had a history of drug dealing. "[F]or any disputed portion of the [PSR] or other controverted matter," the sentencing court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). "[A] sentencing court does not satisfy its Rule 32 obligation by 'simply adopting the [PSR] as its finding.'" *United States v. Rodriguez-Delma*, 456 F.3d 1246, 1253 (10th Cir. 2006) (quoting *United States v. Guzman*, 318 F.3d 1191, 1198 (10th Cir.2003)). Based on our review of the record, the district court did not err by failing to make a finding about Sedillo's history of drug dealing.

First, it's not clear that Sedillo's purported drug-dealing history was even a "controverted matter" under Rule 32. Sedillo's PSR neither stated nor implied that he sold drugs before his arrest in this case. Rather, Sedillo raised the issue in his sentencing memorandum in support of a downward variance, and the Government responded that his spotty employment history suggested that he supplemented his income with drug dealing. Even assuming that the PSR implies that Sedillo had sold drugs in the past, "a defendant does not 'dispute' a PSR's recitation of facts underlying his arrests unless he presents 'information to cast doubt on' the facts." *United States v. Warren*, 737 F.3d 1278, 1285–86 (10th Cir. 2013) (quoting *United States v. Yates,* 22 F.3d 981, 989 (10th Cir.1994)). "If a PSR is *not* disputed in this fashion, it is well established that a district court is free to rely on the PSR at sentencing." *Id.* Nowhere in the record does Sedillo "cast doubt on"

13

any of the underlying facts in his PSR. As such, he failed to create a "controverted matter" for purposes of Rule 32. *See id.*

Second, even if a Rule 32 dispute did exist here, "the district court arguably determined that a ruling [about Sedillo's purported drug-dealing history] was unnecessary" because "[Sedillo's] convicted conduct, standing alone," was enough to justify a sentence at the bottom of the guidelines range. *Id.* Nothing in the record suggests that the district court would have imposed a lower sentence had it made an express finding about Sedillo's drug-dealing history. If anything, the court's questioning during the hearing indicates that it would have resolved the dispute in the Government's favor. *See* R. vol. 2 at 30–31 ("So when [Sedillo] was arrested in El Paso County, Texas for possession of 50 to 2,000 pounds of marijuana, that was just for personal use?"). As a result, Sedillo has failed to establish plain error on this basis.[8] *See Romero*, 491 F.3d at 1178.

### 3. The district court did not plainly err by failing to expressly apply the 18 U.S.C. § 3553(a) factors.

Sedillo also asserts that the district court erred by failing to apply the § 3553(a) factors in reaching its sentence. "[E]very sentence that a district court ultimately imposes must reflect its determination of what is reasonable in light of the same § 3553(a) factors, whether that sentence is within or outside the [g]uidelines range." *United States v.*

---

[8] Sedillo leans heavily on *United States v. Peña-Hermosillo*, 522 F.3d 1108, 1116 (10th Cir. 2008), but that case differs in two key respects. Unlike here, the district court "refus[ed] to permit the parties to introduce testimony on th[e] disputed issue," and failed to explain its refusal. 522 F.3d at 1116. Additionally, the sentence in that case was well outside the advisory-guidelines range. *Id.* at 1109.

14

*Sanchez-Juarez*, 446 F.3d 1109, 1114 (10th Cir. 2006) (citing *United States v. Booker*, 543 U.S. 220, 249–59 (2005)). "Although we have never required a district court to recite any 'magic words' to show that it has fulfilled its obligation to be mindful of the factors Congress has instructed it to consider in § 3553(a), we have nevertheless required the court to give reasons for imposing a particular sentence." *United States v. Hall*, 473 F.3d 1295, 1314 (10th Cir. 2007) (quoting *Sanchez-Juarez*, 446 F.3d at 1115–16). Relevant here, when "a defendant has raised a nonfrivolous argument that the § 3553(a) factors warrant a below-Guidelines sentence and has expressly requested such a sentence, we must be able to discern from the record that the sentencing judge did not rest on the guidelines alone, but . . . considered whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors." *Sanchez-Juarez*, 446 F.3d at 1115–17 (internal quotations omitted). Otherwise, we are left "'in a zone of speculation' on appellate review." *Id.* at 1116 (10th Cir. 2006) (quoting *United States v. Rose*, 185 F.3d 1108, 1112 (10th Cir. 1999)).

Turning to the specifics here, we agree with Sedillo that the district court provided a vague, skeletal explanation of its sentence and failed to elaborate on its consideration of the § 3553(a) factors. Even though a "decision to impose a sentence at the low end of the [g]uidelines range may fairly be read as a functional rejection of" the defendant's § 3553(a) arguments, the district court must do more than "cit[e] [the defendant's] offense conduct" and "not[e] that it ha[s] reviewed the PSR's factual findings and considered the [g]uidelines applications." *Sanchez-Juarez*, 446 F.3d at 1115. Nonetheless, even if we assumed that the district court erred and that the error was plain,

15

we would still affirm Sedillo's sentence because he has not met his burden to prove that the alleged error affected his substantial rights—that is, that it "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). Here, Sedillo has failed to "explain why, on the facts of this particular case, a more detailed reasoning process might have led the court to select a [lower] sentence." *See United States v. Mendoza*, 543 F.3d 1186, 1194 (10th Cir. 2008). Because no evidence suggests that Sedillo's guidelines range was incorrectly calculated, and because the district court sentenced him at the bottom of that range, we see no reason why a more detailed recitation and application of the § 3553(a) factors would have led to a lower sentence. As a result, Sedillo has failed to establish that his sentence is procedurally unreasonable. *See id.*

## B. Substantive Reasonableness

Sedillo next argues that his sentence was substantively unreasonable. "A sentence is substantively unreasonable if 'the length of [the] sentence was excessive given all the circumstances of the case in light of the factors set forth in [18 U.S.C.] § 3553(a).'" *United States v. Naramor*, 726 F.3d 1160, 1171 (10th Cir. 2013) (quoting *Gantt,* 679 F.3d at 1249). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed . . . ;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant . . . ;
> (5) any pertinent policy statement . . .

16

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Because Sedillo preserved this issue, we review the district court's ruling for abuse of discretion, "deem[ing] a sentence unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *Gantt*, 679 F.3d at 1249.

Sedillo argues that "[b]y following an unreasonable sentencing process, the district court crafted a substantively unreasonable sentence." Sedillo's Opening Br. at 33. More specifically, he maintains that the district court failed to explain why 140 months is sufficient, but not greater than necessary "to ensure just punishment and adequate deterrence." *Id.* at 34 (citing *Conlan*, 500 F.3d at 1169). In essence, Sedillo recycles his procedural-reasonableness arguments. *See id.* at 32–35. Because Sedillo does not adequately explain why his low-end sentence is "arbitrary, capricious, whimsical, or manifestly unreasonable," we find no abuse of discretion. *See Gantt*, 679 F.3d at 1249.

### III. Sedillo's Supervised Release Conditions are Unconstitutionally Vague

Last, Sedillo argues that the "get married or pay child support" condition of his supervised release should be stricken as unconstitutionally vague. "We review for abuse of discretion a special condition of supervised release to which timely objection was made; that is, we reverse only if it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *United States v. Martinez-Torres*, 795 F.3d 1233, 1236 (10th Cir. 2015) (internal quotations omitted).

"District courts have broad discretion to impose special conditions of supervised release." *United States v. Bear*, 769 F.3d 1221, 1226 (10th Cir. 2014). But the Fifth

17

Amendment's Due Process Clause requires that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," *see Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972), and this requirement applies with equal force in the context of supervised-release conditions, *see United States v. Mike*, 632 F.3d 686, 694 (10th Cir. 2011). In *Mike*, for example, we found a supervised-release condition impermissibly vague because a "probation officer could reasonably believe that the computer monitoring conditions appl[ied] not only to computers that [the defendant] own[ed], but also to those owned by others, including [the defendant's] employer." *Id.*

Unsurprisingly, the Government concedes that courts cannot require one person to marry another. We agree that any supervised-release condition requiring a defendant to marry would be unenforceable. But because the district court posed the conditions as alternatives, the Government contends that we can sever the marriage-condition portion of the order if we find the child-support condition enforceable. Sedillo, in turn, argues that, even if the conditions are severable, the child-support condition is unconstitutionally vague because no court has ordered him to pay child support. Before determining whether the child-support condition is unconstitutionally vague, however, we must resolve whether the oral pronouncement alone is controlling, or whether we may also look to the written judgment for guidance.

"An orally pronounced sentence controls over a [written] judgment and commitment order when the two conflict." *United States v. Villano*, 816 F.2d 1448, 1450 (10th Cir. 1987) (en banc). "[O]nly if the orally pronounced sentence is ambiguous may a

reviewing court examine a subsequent written order to assist in interpreting the oral sentence." *United States v. Barwig*, 568 F.3d 852, 855 (10th Cir. 2009). Here, the district court's oral pronouncement requires Sedillo to "either marry the mother of [his] children, *or . . . establish an account for the payment of child support for* [*his*] *minor children with the proper agency here in the state of New Mexico*." R. vol. 2 at 55 (emphasis added).

The Government argues that this pronouncement is ambiguous because no court has ordered Sedillo to pay child support, leaving open whom he should pay and how much. To clear up this purported ambiguity, it urges us to look to the written judgment, which states that Sedillo must "comply with child support requirements or marry the mother of his children within 60 days of being released from custody." R. vol. 1 at 76. As the Government sees it, the district court simply meant to order Sedillo to comply with any future child-support orders. *Id.* Sedillo, on the other hand, contends that the oral pronouncement is unambiguous, because the court ordered him to "establish an account" to pay child support. This unambiguity, he argues, prevents us from considering the written judgment.

We agree with Sedillo that the oral pronouncement controls because it is unambiguous. The district court ordered him to affirmatively "establish an account for the payment" of child support. R. vol. 2 at 55. As is our prerogative, we take judicial notice that New Mexico's child-support-enforcement agency allows parents to create an

online account[9] or initiate wage-withholding or automatic withdrawals from their bank accounts.[10] Because someone can "establish an account for the payment of child support" in New Mexico, the oral pronouncement is unambiguous, and we cannot consider the written order.[11] *See Barwig*, 568 F.3d at 855; *Villano*, 816 F.2d at 1450.

Having settled on the orally pronounced condition as the operative one, we agree with Sedillo that the alternative condition to pay child-support is unconstitutionally vague. The oral pronouncement requires Sedillo to "establish an account for the payment of child support for [his] minor children with the proper agency here in the state of New Mexico." R. vol. 2 at 55. But for which minor children? All of them? And how much shall he pay? For how long? Must Sedillo pay child support before a court has adjudicated him as the putative or biological father of a child? A person of ordinary intelligence would not understand how to comply with this supervised-release condition,

---

[9] New Mexico Human Services Department, *Child Support Services Application*, https://elink.hsd.state.nm.us/cLink/Default.aspx (last visited Nov. 16, 2018).

[10] New Mexico Human Services Department, *Making Payments*, http://www.hsd.state.nm.us/LookingForAssistance/making-pyaments.aspx (last visited Nov. 16, 2018).

[11] Even if the oral pronouncement were ambiguous, the written judgment would only add to the ambiguity. Presumably, if Sedillo satisfied the "marry the mother of his children" condition, he would not be required to comply with the child-support condition. But which mother must he marry? He has children with two women. And suppose Sedillo marries Mother #2, and a state court subsequently orders him to pay child support to Mother #1. Would the federal order of supervised release require him to pay child support to Mother #1?

20

so the district court abused its discretion in ordering it, and we vacate this portion of the order. *See Grayned*, 408 U.S. at 108; *Mike*, 632 F.3d at 694.

## CONCLUSION

Consistent with the foregoing, we strike the portion of the order requiring Sedillo to "marry the mother of his children" and remand for the district court to clarify the child-support portion of its order. On remand, the district court may require Sedillo either to comply with any forthcoming child-support orders, or to "support his dependents and meet other family responsibilities," *see* 18 U.S.C. § 3563(b)(1); U.S.S.G. § 5D1.3(d)(1); *United States v. Muñoz*, 812 F.3d 809, 818–19 (10th Cir. 2016) ("[T]he condition is naturally understood to require only financial support that [the defendant] is able to provide."). In all other respects, we affirm Sedillo's sentence.

Entered for the Court

Gregory A. Phillips
Circuit Judge

21